UNITED STATES, Appellant,

v.

Gregory A. FRANCIS, Private, U.S. Marine Corps, Appellee.

No. 43,722.
NMCM 81–1321.

U.S. Court of Military Appeals.

June 20, 1983.

For Appellant: *Commander Jay M. Siegel,* JAGC, USNR (argued); *Captain T.C. Watson, Jr.,* JAGC, USN, *Lieutenant Colonel Thomas H. Eagen,* USMC (on brief); *Commander W.J. Hughes,* JAGC, USN.

For Appellee: *Lieutenant Philip J. Shebest,* JAGC, USNR (argued); *Lieutenant Commander David S. Durbin,* JAGC, USNR (on brief); *Lieutenant Judith S. Robinson,* JAGC, USNR.

*Opinion of the Court*

EVERETT, Chief Judge:

On September 24, 1980, a military judge sitting as a special court-martial at Camp Lejeune, North Carolina, commenced appellee's trial on a charge of unauthorized ab-

sence from March 5, 1979, until July 16, 1980, in violation of Article 86, Uniform Code of Military Justice, 10 U.S.C. § 886. According to the summarized record of this trial, Francis entered a plea of guilty by exceptions and substitutions, whereby he substituted April 3, 1979, as the termination date of his absence. Thus, his plea of guilty was to an unauthorized absence of 29 days, rather than to the absence of more than 16 months with which he was charged.

During the providence inquiry conducted by the military judge, appellee stated that he had failed to return to his unit at Camp Lejeune after weekend liberty on Monday, March 5, 1979. Instead, he had gone to his home in Eugene, Oregon, where he remained until April 3, 1979. He "came back under military control" by turning himself in at the Navy and Marine Corps Reserve Center in Eugene.

Upon concluding the providence inquiry, the "judge announced that he found" appellee's plea of guilty "to be voluntary and made with full knowledge of its meaning and effect." As recited in the summarized record of this trial, the next significant events were these:

The trial counsel stated that the government intended to proceed to offer proof with regard to the greater period of absence.

The military judge announced that the accused was found:

Of the Specification: Guilty, except for the date, "16 July 1980," substituting therefor the date, "3 April 1979,"

The military judge made no finding with regard to the excepted date, but found the accused guilty of the termination date of 3 April 1979;

Of the specification as excepted, and of the Charge: Guilty.

The trial counsel requested a continuance until the next available court date and time.

The defense counsel objected to a continuance being granted on the ground that, on the 11th of September 1980, at 1606, the defense counsel had indicated, in writing, to Captain MILLER that the ac-

cused would plead guilty with exceptions and substitutions, therefore informing trial counsel—any trial counsel that the government desired to put forth in this case—that for some portion of this UA period, the defense was going to plead not guilty. Defense contended that the government had ample opportunity to know that they were going to be placed in this position and the government had failed to properly prepare.

The military judge inquired if defense had granted government counsel discovery as to the date and/or place the accused was averred to have come back under military control or returned to his military unit. Defense counsel responded that the government had never requested such discovery.

Trial counsel stated that government counsel had requested, upon being informed of the change in counsel for the government, the dates, location, and reasons for termination, which was denied by defense counsel.

Soon thereafter, the court adjourned. When it reconvened on September 26, the record of trial reflects these events:

At the outset, the prosecution requested that the military judge not make any findings as to the greater period of absence charged, i.e., 3 April 1979 to 16 July 1980. The trial counsel stated that the Government felt that no jeopardy had attached at this point in that the Government had presented no evidence. The trial counsel cited as legal authority Article 44, UCMJ [10 U.S.C. § 844], and paragraphs 68d and 215b of the Manual for Courts-Martial. The prosecution stated he felt it was too late to amend the current charges or to withdraw the charges as they exist.

After argument, "[t]he military judge granted the trial counsel's request that no findings be made with the greater period alleged in the specification, from 3 April 1979 to 16 July 1980." Thereafter, the judge proceeded to the sentencing phase of the trial and considered evidence in mitigation and the argument of the parties on the

quantum of punishment. Then he sentenced Francis to confinement for 30 days.

On November 3, 1980, Francis was tried by another special court-martial on a charge alleging that he had been absent without authority from April 9, 1979, until July 16, 1980. Relying on the events of the earlier trial, the defense moved to dismiss on grounds of *res judicata* and former jeopardy. In support of the motion, the defense counsel offered into evidence several documents and five oral stipulations pertaining to the earlier trial. In substance, the stipulations were:

One. The defense objected to the judge's decision not to enter a finding as to the guilt of Private FRANCIS for his absence after his early termination.

Two . . . . The trial counsel requested the judge specifically not to make a finding in the first trial as to the greater period so that the Government could attempt to prosecute Private FRANCIS for the remaining period of unauthorized absence following his early termination.

Three. The trial counsel did not request a withdrawal, and the convening authority made no specific withdrawal. There were no reasons given on the record for any grounds of withdrawal.

Four, that [at] the trial [which began on September 24, 1980] [the] court . . . specifically did not enter a finding as to the guilt or innocence of Private FRANCIS's absence beyond that which he pled to in the first trial, pursuant to the trial counsel's request.

Five . . . . No evidence was introduced on the merits in the first trial, and, further, the first trial determined Private FRANCIS's guilt by a provident guilty plea only.

After reviewing with counsel these occurrences at the prior trial, the military judge denied the defense motion to dismiss.

Appellee testified in his own defense that he "was supposed to catch a plane" back to Camp Lejeune on April 9, 1979. However, he had not done so "[b]ecause . . . [of] financial problems that I was still tending to." The order to return to Camp Lejeune had been given by a staff sergeant at the Reserve Center. Following a brief argument by counsel, the judge found appellee guilty as charged; and, after presentence proceedings, he sentenced appellee to a bad-conduct discharge, although he recommended "that the convening authority seriously consider the suspension of your bad-conduct discharge." The convening authority, in turn, approved the sentence but, pursuant to the judge's recommendation, suspended the discharge.[1] The supervisory authority approved the sentence as suspended.

Upon further appellate review of the case, the Court of Military Review set aside the findings and sentence, and dismissed the Charge. 13 M.J. 716 (1982). Its unanimous opinion concluded that, in view of the Marine Corps' requirements for keeping records as to unauthorized absences, the Government had been on notice that appellee had returned to military custody on April 3, 1979. Accordingly, appellee was the victim of prejudicial error, either because the Government had failed to join all the charges at the initial trial, as prescribed by the Manual for Courts-Martial, or because the action of the military judge created former jeopardy.

The Judge Advocate General of the Navy then certified to us this issue:

WAS THE UNITED STATES NAVY–MARINE CORPS COURT OF MILITARY REVIEW CORRECT AS A MATTER OF LAW BY DISMISSING THE CHARGE AND SPECIFICATION AS TO THE ALLEGED UNAUTHORIZED ABSENCE EITHER BECAUSE "(DOUBLE) JEOPARDY ATTACHED TO THE ENTIRE PERIOD STATED IN THE SPECIFICATION," OR BECAUSE OF THE FAILURE TO TRY ALL KNOWN CHARGES AT A SINGLE TRIAL? MANUAL FOR COURTS–MARTIAL, 1969 (REV.), PAR. 33*h*.

---

1. The convening authority suspended the discharge "for the period of confinement and 9 months thereafter," but no confinement was adjudged.

## I

"[U]nauthorized absence . . . is not a continuing offense," so "the statute of limitations begins to run against the offense at the moment of the inception of the absence, not its termination." However, "time is crucial to an unauthorized absence in at least two ways." These "ways" are:

First, the length of an unauthorized absence is the essential element in determining the legal punishment for the offense. *United States v. Lovell,* 7 USCMA 445, 22 CMR 235 (1956). Under the Table of Maximum Punishments, depending upon the duration of the absence, one of three maximums applies. Secondly, an unauthorized absence that is "single and uninterrupted" cannot be fragmented into two or more separate periods, with each part made separately punishable. *United States v. Emerson, . . .* [1 USC-MA 43,] 46, 1 CMR . . . [43,] 46.

*United States v. Lynch,* 22 U.S.C.M.A. 457, 460, 47 C.M.R. 498, 501 (1973).

In light of this judicial doctrine concerning unauthorized absence, we can sympathize with the predicament of the prosecutor at the first trial. Appellee had been arraigned on a single charge and specification of unauthorized absence, so that only one offense was pending before the court for trial. However, if Francis returned to military control at Eugene, Oregon, on April 3, then the unauthorized absence which had commenced on March 5 was terminated after only 29 days. Therefore, if appellee *again went absent without authority* on April 9, this absence constituted a second and different offense from the one with which he had been charged. *United States v. Reeder,* 22 U.S.C.M.A. 11, 46 C.M.R. 11 (1972); *United States v. Brown,* 1 M.J. 937 (N.C.M.R.1976).

The Manual for Courts-Martial prescribes that after arraignment no new charges against the accused shall be added. Paras. 24*b* and 65*b*, Manual for Courts-Martial, United States, 1969 (Revised edition). Thus, the Manual would have been violated if the original charge had been amended after arraignment to show that the absence

which commenced on March 5 had ended on April 3 and an additional charge alleging an unauthorized absence from April 9, 1979, until July 16, 1980, had been referred to the same court-martial for trial with the amended charge.

However, risks were involved if the Government used alternative courses of action. The original charge could have been withdrawn by the convening authority from the special court-martial to which it had been referred and then, after amendment to allege the proper date of termination, rereferred to another court-martial for trial. Before the second court-martial the accused could not have claimed a violation of Article 44 or of the Fifth Amendment, since the first court-martial consisted of a military judge alone and no evidence had been presented prior to the amendment. *See Crist v. Bretz,* 437 U.S. 28, 98 S.Ct. 2156, 57 L.Ed.2d 24 (1978); *Serfass v. United States,* 420 U.S. 377, 95 S.Ct. 1055, 43 L.Ed.2d 265 (1975); Article 44(c); *United States v. Richardson,* 21 U.S.C.M.A. 54, 44 C.M.R. 108 (1971). On the other hand, when the charges, as rereferred, came before the second court-martial for trial, appellee might have claimed that the original withdrawal was not for a proper purpose within the contemplation of paragraph 56*a,* Manual, *supra,* as interpreted and applied by this Court. *See United States v. Blaylock,* 15 M.J. 190 (C.M.A.1983); *United States v. Charette,* 15 M.J. 197 (C.M.A.1983); *United States v. Delano,* 12 M.J. 948 (N.C.M.R. 1982). In support of this position, the defense could then have contended that the withdrawal of charges was occasioned by careless record-keeping by the Marine Corps in violation of its own regulations, *see generally* sections 4007, 4009, and 4014, Marine Corps Individual Records Administration Manual, MCOP 1070.12, and by sloppy trial preparation.

A third option would have been for the trial counsel to request an amendment of the charge pending before the special court-martial in order to allege a termination date of April 3, and, after the amendment had been allowed, to complete the first tri-

al. Then a second prosecution could be instituted for the absence which commenced on April 9, 1979. However, in paragraph 33 h, the Manual for Courts-Martial provides that all known charges should be tried at a single trial[2], and so, at the second trial, appellee would probably have claimed that this provision had been violated. In that event, it would have been necessary to determine whether, in light of appellee's return to military control at Eugene, Oregon, the Marine Corps had notice that there were two offenses, rather than one, as the court below concluded. A second issue might have been whether paragraph 33h is mandatory or only precatory.

Trial counsel did not choose to utilize any of these options—perhaps because of the rather precipitous action by the military judge, who not only accepted the plea of guilty by exceptions and substitutions but also immediately found appellee guilty pursuant to that plea. Thereafter, trial counsel requested the judge to make no finding with respect to the period of absence alleged subsequent to April 3, 1979, and the judge complied with that request. The Manual for Courts-Martial states that "[p]ermissible findings include guilty; not guilty; guilty with exceptions, with or without substitutions, and not guilty of the exceptions and guilty of any substitutions, as stated below." Para. 74b(1), Manual, supra. In our examination of the Manual, we have found no authority for a judge or court members to conclude a trial without making any findings as to some of the allegations on which the accused has been brought to trial. Indeed, the emphasis of the Code and the Manual is on promptly disposing of charges, rather than leaving matters in limbo. See, e.g., Article 53, UCMJ, 10 U.S.C. § 853.

In prescribing the procedure for courts-martial with members, the Manual apparently anticipated that in some instances the members might be unable to reach a finding as to guilt or innocence so it expressly provided that "[a] finding of not guilty

results as to any specification or charge if no other valid finding is reached thereon." Para. 74d(3), Manual, supra. This provision was not applied directly to judges—probably because the drafters of the Manual never foresaw that a judge would be unable to reach a finding on all charges and specifications before him for trial. However, presumably, pursuant to the accused's presumption of innocence, the same policy would apply to a bench trial, and a finding of not guilty would result from the failure of the judge to make findings as to a specification. According to this rationale, the military judge's refusal to enter a finding as to appellee's alleged unauthorized absence with respect to any time after April 3, 1979, was equivalent in legal effect to a finding of not guilty of unauthorized absence from that date until July 16, 1980. In that event, appellee was entitled to claim former jeopardy and res judicata at his second trial, since a finding of not guilty as to a specification of unauthorized absence constitutes an acquittal as to any absences included within the period alleged. United States v. Lynch, supra.

Regardless, however, of the legal effects of the military judge's refusal to enter a finding as to the period after April 3, 1979, his finding that the accused was guilty of an absence from March 5 until April 3 had the effect of creating double jeopardy as to any subsequent trial for any unauthorized absence commencing within the period encompassed by the charge on which appellee initially was brought to trial. In this regard, the present case is governed by Brown v. Ohio, 432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977), where the Supreme Court held that a prosecution for auto theft was barred by the defendant's earlier conviction for joyriding, since proof of the theft would also have established guilt of joyriding. Cf. Illinois v. Vitale, 447 U.S. 410, 100 S.Ct. 2260, 65 L.Ed.2d 228 (1980). The joyriding in Brown was a lesser-included offense of theft of the automobile, while here, in one sense, the second absence, ex-

---

2. The provision does not refer to "known" charges, but this Court has so interpreted it.

See, e.g., United States v. Thomas, 17 U.S.C. M.A. 22, 37 C.M.R. 286 (1967).

tending from April 9, 1979, until July 16, 1980, was not a lesser-included offense of the longer period of absence for which appellee was tried by the first court-martial. However, we do not think this distinction is material. In the case at bar, if the evidence had established that appellee had not been absent without leave until April 9, 1979, he could have been convicted by exceptions and substitutions of an absence commencing on that date and extending until July 16, 1980. Thus, the unauthorized absence of which Francis was ultimately convicted by the second court-martial can be viewed as included within the same allegations on which he was tried, and on which a finding of guilty was rendered, by the first court-martial. In our view, that relationship suffices to make *Brown* applicable. Thus, the Court of Military Review properly determined that appellee could not be tried by the second court-martial for his absence commencing on April 9, 1979.

## II

In the present case, trial counsel learned that there were two absences, rather than only one, when Francis entered his plea of guilty by exceptions and substitutions. Frequently, the existence of two absences, rather than one, comes to light only after the accused has pleaded not guilty, the Government has offered its evidence, and the defense begins to present its case. However, whether the accused has pleaded guilty or not guilty, the rule seems to be that, since he has been charged with a single offense—a single unauthorized absence—he cannot be found guilty of two absences which occurred within the period of the absence initially alleged. Then, having been found guilty of a single offense— the first absence—the accused is protected by double jeopardy from prosecution for a second absence. *United States v. Lynch, supra; United States v. Florczak,* 49 C.M.R. 786 (A.C.M.R.1975).

We doubt the correctness of the underlying premise that an accused charged with one offense cannot be found guilty of more than one at the same trial. Certainly this is not universally true, since we have held that a single charge of robbery may result in findings that an accused is guilty of two offenses—namely, wrongful appropriation and assault. *United States v. Calhoun,* 5 U.S.C.M.A. 428, 18 C.M.R. 52 (1955). In the present case, appellee was on notice that he was charged with unauthorized absence from March 5, 1979, until July 16, 1980. He can hardly claim to have been misled if, on the basis of his own plea or evidence, it appears that he came back under military control for some time during that period. Moreover, he would be entitled to claim double jeopardy at any subsequent trial for any unauthorized absence occurring during the period of absence for which he was originally charged. *United States v. Lynch, supra.* In *United States v. Reeder, supra* at 13, 46 C.M.R. at 13, we concluded that a material variance would exist if an accused were convicted of two short absences that occurred during the period of the longer absence with which he was charged, since "the offense sought to be affirmed is not comprehended within the one charged." However, that conclusion seems erroneous since, under *Lynch,* any lesser absence is "comprehended" within a longer absence in the sense that, after trial for the longer absence, the Government is barred by double jeopardy from prosecuting later for the shorter absence commencing during the period alleged in the original charge.

Unfairness to an accused would result only if findings of guilty of the two lesser absences authorized a greater maximum punishment than would be permitted if he were convicted only of the single longer absence for which he was brought to trial.[3]

3. *See* para. 127c, Manual for Courts-Martial, United States, 1969 (Revised edition). Conceivably, this could occur under two sets of circumstances. First, of course, simply because two offenses are being punished instead of one, the maximum sentence might well increase. Second, by operation of the third paragraph of Section B of the Table of Maximum Punishments, if a single alleged absence of not more than 30 days was split into two absences, the maximum punishment then would include a bad-conduct discharge whereas originally it would not.

However, that problem can readily be avoided by limiting the maximum punishment upon conviction of the two absences to that which would have been permitted if the accused had been convicted of the single charge on which the Government originally brought him to trial. Of course, such an outcome is fair to the Government, since it allows punishment to the same extent available to the Government when the trial commenced.

### III

The Court of Military Review was correct as a matter of law in dismissing the charge and specification on which appellee was tried on November 3, 1980, because double jeopardy had attached. Accordingly, the decision of the United States Navy-Marine Corps Court of Military Review is affirmed.

Judges COOK and FLETCHER concur.