UNITED STATES, Appellee,

v.

Mitchell K. BRADLEY, Staff Sergeant,
U.S. Air Force, Appellant.

No. 62,013.
ACM 27126.

U.S. Court of Military Appeals.

Argued Jan. 10, 1990.

Decided Aug. 27, 1990.

For Appellant: *Captain Darla G. Orn-dorff* (argued); *Colonel Richard F. O'Hair* (on brief).

For Appellee: *Major Paul H. Blackwell, Jr.* (argued); *Colonel Joe R. Lamport, Major Terry M. Petrie, Captain David G. Nix* (on brief); *Colonel Robert E. Giovagnoni.*

*Opinion of the Court*

SULLIVAN, Judge:

Appellant was tried by a military judge sitting alone as a general court-martial at Beale Air Force Base, California, on July 14, 1988. He was found guilty of larceny and housebreaking, in violation of Articles 121 and 130, Uniform Code of Military Justice, 10 USC §§ 921 and 930, respectively. He was sentenced to a bad-conduct discharge, confinement and forfeiture of $200.00 pay per month for 8 months, and reduction to airman basic. The convening authority approved the sentence on September 7, 1988. The Court of Military Review modified the housebreaking specification by excepting certain language and adding a Charge IV and an unlawful-entry specification on the basis of the excepted language. It then approved the findings of guilty to all the above charges and specifications and the sentence. 27 MJ 872 (1989).

This Court granted review of the following two issues:

## I

WHETHER APPELLANT WAS SUBJECTED TO SELECTIVE PROSECUTION IN VIOLATION OF HIS FIFTH AMENDMENT RIGHT TO DUE PROCESS AND EQUAL PROTECTION.

## II

WHETHER THE AIR FORCE COURT OF MILITARY REVIEW HAS THE AUTHORITY TO SEPARATE THE CRIMES ALLEGED IN CHARGE III AND CREATE AN ADDITIONAL CHARGE, LABELLING IT CHARGE IV.

We resolve the first issue in favor of the Government, but the second issue we resolve in favor of appellant.

The facts giving rise to the first granted issue were noted by the Court of Military Review as follows:

He [appellant] was part of a band of six Security Police thieves at Beale Air Force Base, California. When the Office of Special Investigations broke up the ring, they interviewed everyone. All but Staff Sergeant Bradley confessed their involvement; in contrast, he stood on this Article 31, 10 USC § 831 rights. Later, the other five received nonjudicial punishment.... [H]is commander conceded on cross-examination that the "uncooperative" Bradley might have received nonjudicial punishment had he too admitted culpability.

*       *       *       *       *       *

During this timeframe, his status was distinctive; he was the Security Police flight chief, assistant flight chief, or security response team leader charged with protecting the areas in which his criminal activities took place. He was also senior to all others present. According to testimony at trial, his enterprise extended to stealing things and then calling others to advise that he had booty for them. Moreover, as his unit commander explained it, the accused had a greater culpability because it appeared he "took more."

Significantly, Sergeant Bradley had "additional responsibilities as security flight chief and he had special privileges and special trust in that leadership role", according to his commander. On cross-examination, the unit commander pointedly disagreed with the defense claim that appellant's assertion of Article 31 rights inspired his court-martial: "No, that's not the real reason at all. I see the real reason—that he was the flight chief, he was responsible for those men and women working."

27 MJ at 873–74.

The second granted issue arose from another portion of that opinion. The court below said:

The appellant was charged in a single specification with housebreaking into both Buildings 1086 and 1029 at Beale Air Force Base.[1] At trial, he pleaded not guilty vis-a-vis Building 1029 and guilty to the lesser included offense of unlawful entry as to Building 1086. After a detailed inquiry by the military judge, the appellant's pleas to the lesser included offense at Building 1086 were accepted. Soon thereafter, the Government opted to: (a) litigate fully the matter of Building 1029; and (b) produce no further evidence as to Building 1086. True to its word, the prosecution offered nothing further as to Building 1086. The military judge—perhaps through oversight at the end of an extensively litigated trial—found Staff Sergeant Bradley guilty of the entire specification, thereby signifying he was guilty of housebreaking as to both buildings.

27 MJ at 874 (footnote omitted).

---

After reviewing these precedents [which the court earlier set out], we conclude that [*United States v.*] *Chortkoff*

---

1. Unlike the specification of Charge II, the specification of Charge III fails to allege where the housebreaking occurred. *See United States v.*

*McKinney*, 40 CMR 1013, 1020 (AFBR), *pet. denied*, 19 USCMA 594, 40 CMR 327 (1969). This type of omission should be avoided.

[34 C.M.R. 774 (A.F.B.R.1963)] represents good law. We find nothing offensive in halving the specification in question into two "mini specifications" to reflect accurately what the accused did: He wrongfully entered Building 1086 but he was guilty of the greater offense of housebreaking in relation to Building 1029. We see no requirement in justice or fairness to intentionally distort the accused's criminal conduct by setting aside guilty findings that are not duplicative in fact. *See United States v. Tyler,* 14 M.J. 811, 813 (A.C.M.R.1982). Furthermore, we are convinced that the accused was not misled and he would be protected against double jeopardy. *United States v. Lynch,* 22 U.S.C.M.A. 457, 460, 47 C.M.R. 498, 501 (1973). Finally we have no difficulty with the fact that the offenses fall under different articles of the UCMJ. Modern authority is scant, but we find persuasive *United States v. Francis,* 15 M.J. 424, 429 (C.M.A.1983); there, the Court of Military Appeals in an unauthorized absence case involving mixed pleas as to different timeframes commented that: "We doubt the correctness of the underlying premise that an accused charged with one offense cannot be found guilty of more than one at the same trial."

Accordingly, to reflect the conduct of which the accused was properly found guilty upon his pleas by the military judge, we first clarify the matter of unlawful entry into Building 1086 and amend by adding a specification under a new Charge IV, UCMJ Article 134, which will state:

> In that STAFF SERGEANT MITCHELL K. BRADLEY, United States Air Force, 9th Security Police Squadron, Beale Air Force Base, California, did, from on or about 1 August 1987 to on or about 31 December 1987, unlawfully enter the "Penthouse" area of Building 1086, property of the United States, in violation of Article 134, UCMJ.

After having thus added a new specification and Charge IV involving Building 1086, we will: (a) delete any mention of

the same from the original Charge III and its specification; and (b) tailor that specification to reflect solely the housebreaking at Building 1029. Therefore, we set aside so much of the approved findings of guilty of the original specification of Charge III as *exceeds* findings that the accused did, at the time alleged, unlawfully enter Building 1029 with intent to commit a criminal offense, to wit: larceny, therein, a violation of Article 130, UCMJ.

*27 MJ at 876-77.*

I

■ Appellant's initial complaint is that he was unlawfully subjected to a court-martial because he exercised his right to remain silent under the Fifth Amendment when questioned by law enforcement authorities prior to trial. *See United States v. Hagen,* 25 MJ 78, 83 (CMA 1987), *cert. denied,* 484 U.S. 1060, 108 S.Ct. 1015, 98 L.Ed.2d 981 (1988). *See generally Wayte v. United States,* 470 U.S. 598, 105 S.Ct. 1524, 84 L.Ed.2d 547 (1985). He notes that his fellow thieves who immediately confessed to their criminal acts were only subjected to nonjudicial punishment under Article 15, UCMJ, 10 USC § 815. He further asserts that his security police squadron commander admitted such a discriminatory intent to defense counsel prior to trial and in testimony during sentencing. *Cf.* RCM 401-03, Manual for Courts–Martial, United States, 1984. Such "selective prosecution," he contends, is barred by the Fifth Amendment.

We note, as did the Court of Military Review, that appellant raised this claim for the first time at the appellate level. *Cf.* RCM 905(b)(1). Moreover, there was no evidence of any attempt by the defense to interview the actual convening authority in this case. *See United States v. Schoolcraft,* 879 F.2d 64, 68–69 (3d Cir.), *cert. denied,* —— U.S. ——, 110 S.Ct. 546, 107 L.Ed.2d 543 (1989); *cf. United States v. Hagen, supra* at 85–86. As noted by the court below, a finding of waiver based on appellant's failure to properly raise this

claim might be appropriate. *See* RCM 905(e); *United States v. Mann*, 884 F.2d 532, 539–40 (10th Cir.1989). The Government, however, has not actively pursued this argument in its brief, so we need not decide this question today. *See United States v. Aguilar*, 883 F.2d 662, 705 n.44 (9th Cir.), *cert. pending* (Dec. 1, 1989). Nevertheless, appellant has the burden of proof on this claim, and we conclude no inferences need be drawn in his favor under these circumstances. *See United States v. Williams*, 29 MJ 112, 117 (CMA 1989); *United States v. Hagen, supra* at 83.

Turning to appellant's claim, we are not persuaded as a matter of law that appellant and his fellow miscreants were similarly situated for purposes of his equal protection argument. Admittedly, SSgt Wroe, Sgt Schmidt, Sgt Whitesell, A1C Thompson, Amn King, and Sgt Kozubal all participated to varying degrees in the theft with appellant. Yet, all these accomplices testified as government witnesses under grants of immunity and against appellant at his trial. *See Jarrett v. United States*, 822 F.2d 1438, 1444 (7th Cir.1987). *See generally* ABA Standards, *The Prosecution Function* § 3–3.9(b)(vi) (2d ed.1982). Moreover, the record also established appellant's superior rank in this group and his leading role as a boss in the charged crimes. *See United States v. Bell*, 506 F.2d 207, 222 (D.C.Cir.1974). Finally, as noted above, we construe the evidence of record, including the commander's express disavowel of any intent to punish appellant

for exercising his rights,[2] in the Government's favor. It reasonably reflects a rational and legitimate prosecutorial policy of leniency for the contrite. *See also United States v. Araujo*, 539 F.2d 287, 292 (2d Cir.), *cert. denied*, 429 U.S. 983, 97 S.Ct. 498, 50 L.Ed.2d 593 (1976). Accordingly, in view of all of the above, we find appellant's constitutional claim is without merit. *See also United States v. Goodwin*, 457 U.S. 368, 102 S.Ct. 2485, 73 L.Ed.2d 74 (1982).

II

■ Appellant also asserts that the Court of Military Review's affirmance of findings of guilty to Charge IV and its specification of unlawful entry into Building 1086 in violation of Article 134 must be set aside. He agrees that the court below was correct in setting aside a portion of his conviction for housebreaking into Building 1086 under Charge III. Nevertheless, he notes that the convening authority did not approve findings of guilty to the appellate-created charge and specification of unlawful entry. *See* Art. 66(c), UCMJ, 10 USC § 866(c). He also suggests that such findings of guilty in addition to a modified finding of guilty to housebreaking into Building 1029 under the original charge are not sanctioned by our caselaw. We agree.

The decision to charge appellant with housebreaking into two different buildings, numbers 1086 and 1029, in a single charge and specification rested with the Government. *See United States v. Baker*, 14 MJ

---

2. Q. In fact his duty performance was outstanding, wasn't it?
   A. Yes, a good duty performer. There were other reasons that I recommended certain actions for other people different than for—
   Q. Go ahead, Major. Go ahead.
   A. Yes, the reason that I believe that Sergeant Bradley is somewhat different than some of the other folks is that I had special— we gave him additional responsibilities as security flight chief and he had special privileges and special trust in that leadership role. Also, Sergeant Bradley, in my mind, did not fully cooperate with the investigation as other folks immediately did that were involved in it. But I also look at the amount of items that were stolen.

Q. *Isn't that really the key though, sir? Sergeant Bradley was the only one who exercised his constitutional rights to remain silent?*
A. *No, that's not the real reason at all. I see the real reasons—that he was the flight chief, he was responsible for those men and women working.*
Q. Sir, was he the flight chief during all these incidents?
A. Not during all of them but during a large part of them.
Q. Which ones, sir?
A. I can't categorically state which ones. Some of these we don't know exactly when they occurred.
(Emphasis added.)

361, 365 (CMA 1983). *Cf.* RCM 307(c)(4). However, the number of charges and specifications for which an accused is actually found guilty may be of great importance to him. *See Ball v. United States*, 470 U.S. 856, 865, 105 S.Ct. 1668, 1673, 84 L.Ed.2d 740 (1985). *Cf. United States v. Francis*, 15 MJ 424, 429–30 (CMA 1983). Here, the Court of Military Review not only increased the number of charges and specifications against him but did so as a remedy for his successful claim that the Government had not proved his guilt of housebreaking into Building 1086. *Cf. United States v. Hoff*, 27 MJ 70, 73 n.2 (CMA 1988).

*United States v. Calhoun*, 5 USCMA 428, 18 CMR 52 (1955), does not authorize such judicial action. It approved the bifurcation of a charge of a "relatively rare" compound offense, which housebreaking certainly is not. *See* para. 56, Part IV, Manual, *supra; United States v. Pardue*, 15 USCMA 483, 485, 35 CMR 455, 457 (1965). Moreover, that decision did not sanction approval of a finding of guilty to both the greater and lesser offense, as in appellant's case, but to two lesser-included offenses. Finally, *United States v. Francis, supra*, need not be expanded beyond the unique situation of unauthorized-absence offenses. Instead, normal federal practice for conjunctive pleadings should be applied in this case, which would sustain a single modified finding of guilty to the charged offense. *See generally Turner v. United States*, 396 U.S 398, 420 n. 42, 90 S.Ct. 642, 654 n. 42, 24 L.Ed.2d 610 (1970); *United States v. Merida*, 765 F.2d. 1205, 1222 (5th Cir.1985); *United States v. Rubio–Gonzalez*, 674 F.2d 1067, 1073 (5th Cir. 1982). Accordingly, the added charge must be dismissed and the modified finding of guilty of housebreaking into Building 1029 under Article 130 will stand.

We discern no prejudice as to sentence from this action.

The decision of the United States Air Force Court of Military Review is reversed as to Charge IV and the specification thereunder. The findings of guilty thereon are set aside and that Charge and specification are dismissed. In all other respects the decision below is affirmed.

Judge COX concurs.

EVERETT, Chief Judge (concurring in part and dissenting in part):

I agree with the majority that appellant failed to establish that he was a victim of selective prosecution. However, I disagree as to the second issue and would not dismiss the Charge and specification added by the Court of Military Review.

Appellant was charged in a single specification with breaking into Building 1029 and Building 1086, in violation of Article 130, Uniform Code of Military Justice, 10 USC § 930. He pleaded not guilty as to Building 1029; and as to Building 1086, he pleaded guilty to the lesser-included offense of unlawful entry. The Government produced evidence which established Bradley's guilt of housebreaking into Building 1029, but it offered no evidence as to Building 1086 and relied solely on his guilty plea.

Under these circumstances, the military judge should have found appellant guilty of housebreaking as to Building 1029 and unlawful entry into Building 1086. The problem exists now because the original specification was drawn under Article 130 and unlawful entry is a violation of Article 134, UCMJ, 10 USC § 934.

In my opinion, the remedy chosen by the Court of Military Review was permissible. Where a compound offense is alleged, we have allowed a single specification to be divided into separate parts when different findings of guilty were rendered. *See United States v. Calhoun*, 5 USCMA 428, 18 CMR 52 (1955). Moreover, in *United States v.' Francis*, 15 MJ 424 (CMA 1983)— which relied on *Calhoun*—we held that an accused who had been charged in a single specification with a lengthy unauthorized absence could be found guilty of several included periods of unauthorized absence, as long as the maximum punishment was not increased thereby. I agree with the

Court of Military Review that its decision here came within the rationale of *Francis.*

The majority opinion properly recognizes that the number of charges of which an accused is found guilty may be of great importance to him. Thus, in *Ball v. United States,* 470 U.S. 856, 865, 105 S.Ct. 1668, 1673, 84 L.Ed.2d 740 (1985), the Supreme Court held that, if two counts of an indictment allege the same offense, convictions cannot be affirmed on both counts, even though concurrent sentences have been imposed. Our Court has also disapproved repeatedly alleging a single crime in multiple specifications. *See e.g., United States v. Gibson,* 11 MJ 435 (CMA 1981).

The difference here is that Bradley was charged with two housebreakings that were separate offenses, even though they were alleged in a single specification. Appellant could properly have moved that the single specification be divided into two specifications; and it might even be argued that, under the circumstances of this case, his plea of guilty was the functional equivalent of a motion to sever the specification into its two component offenses.

Apparently the majority is convinced that, once the Government elects to group separate offenses into a single specification, it should be bound by that election. I would subscribe to this view to the extent of holding that this election places a ceiling on the maximum punishment that can be imposed, *cf. United States v. Francis, supra;* but I would go no further.

In addition, if the majority is concerned with the possibility that appellant will be prejudiced in some way if one specification is replaced by two, this concern can be met without giving Bradley the windfall of setting aside the finding of unlawful entry, to which he properly pleaded guilty. Instead, the finding of unlawful entry into Building 1086 can remain within the bounds of a single specification—along with the finding of guilty of housebreaking into Building 1029. The fact that the unlawful-entry finding would be part of a specification charged under Article 130, rather than Article 134, poses no obstacle; reference in a Charge to an article of the Code is surplusage and liability is determined by the specific allegations and the findings. *See United States v. McCormick,* 12 USCMA 26, 28, 30 CMR 26, 28 (1960). *Cf. United States v. Reichenbach,* 29 MJ 128 (CMA 1989). Moreover, liability under Article 130 would be sustained by the findings of guilty in the same specification with respect to Building 1029.

The Air Force, where this case arose—and to a lesser extent, its sister Services—have begun to group multiple larcenies, housebreakings, bad-check offenses, drug offenses, and the like into a single specification—instead of cluttering up charge sheets with a multitude of separate specifications. This laudable practice usually benefits the Government by simplifying the pleadings, the instructions, and the findings and by eliminating issues of multiplicity. Also, it benefits the accused, because with fewer specifications, the maximum punishment is lower. I fear that one result of the majority opinion will be to slow down this desirable trend towards simplified pleading.