## UNITED STATES

v.

## Airman Basic Rene T. VENDIVEL, FR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, United States Air Force.

## UNITED STATES

v.

## Airman Basic Timothy L. LEWIS, FR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, United States Air Force.

## ACM 30284, 30300.

U.S. Air Force Court of Military Review.

Sentence Adjudged 13 Aug. 1992.

Sentence Adjudged 5 Nov. 1992.

Decided 16 June 1993.

---

Appellate Counsel for the Appellant in ACM 30284: Colonel Terry J. Woodhouse, Lieutenant Colonel Frank J. Spinner, and Captain Ursula P. Moul.

Appellate Counsel for the Government: Colonel Richard L. Purdon and Lieutenant Colonel Jeffery T. Infelise.

Appellate Counsel for the Appellant in ACM 30300: Colonel Terry J. Woodhouse and Captain Robert E. Watson.

Before LEONARD, JAMES, and JOHNSON, Appellate Military Judges.

## OPINION OF THE COURT

JAMES, Judge:

Recently we held that R.C.M. 707, our current Executive speedy trial rule, should be applied according to its clear provisions: It governs cases in which arraignment occurs on or after July 6, 1991. Exec. Order No. 12,767, § 4d (June 27, 1991), 56 Fed. Reg. 30,284, 3 C.F.R. —— (19——); *United States v. Shim*, 36 M.J. 1124 (A.F.C.M.R. 1993). That holding introduces new complexity when the charges include lengthy absence offenses under Article 85 (desertion) or 86 (absence without leave), UCMJ, 10 U.S.C. §§ 885–86 (1988). The present cases are such cases, but we hold the R.C.M. 707 speedy trial issue to have been waived. The more difficult question is whether we should decide the cases on that

ground. We do not. Instead, we remand the cases for post-trial sessions.

## I. Facts

### A. United States v. Vendivel

Airman Vendivel was convicted by a court-martial in 1981,[1] but he absented himself before it could adjudge a sentence.[2] A charge of desertion was preferred in 1982 and forwarded to the summary court-martial convening authority, tolling the statute of limitations[3] on that charge. Airman Vendivel then remained absent for nearly 11 years before he was apprehended. The same charge sheet was located and referred during the present prosecution.

Airman Vendivel was arraigned on August 12, 1992, and R.C.M. 707 (Manual for Courts–Martial, 1984, change 5[4]) governs his case. As in *Shim*, no delay appears to have been requested in this case in time to stop the 120–day clock, *see* R.C.M. 707(c), because there was then no such rule as presently requires that maneuver. Accordingly, the 120–day clock began to run on the date these charges were *preferred*, R.C.M. 707(a)(1), and it probably ran out in 1982, long before the Secretary of the Air Force is said to have granted delays in such absence cases in 1991.

Though Airman Vendivel pleaded not guilty, he did not move for dismissal of the charges under R.C.M. 707(d).

### B. United States v. Lewis

Airman Lewis' case is just a less ancient version of Airman Vendivel's case. Airman Lewis left his unit on about October 1, 1985. A charge of desertion was preferred on November 14, 1985 and forwarded to toll the statute of limitations. The military regained control of Airman Lewis in September 1992, about 7 years later. Once again, the same charge sheet was located

---

1. He was convicted of 11 violations of Article 134, UCMJ, 10 U.S.C. § 934 (1988), mostly by stealing mail in the postal service center where he worked.

2. The court-martial then continued without him and sentenced him to be discharged from the service with a bad-conduct discharge, to be con-

fined for 6 years, to forfeit all pay and allowances, and to be reduced to E–1.

3. Article 43, UCMJ, Act of May 5, 1950, 64 Stat. 107, 121, recodified by Act of August 10, 1956, 70A Stat. 1, 51.

4. Exec. Order No. 12,767, *supra*.

and referred for trial in the present prosecution, as has long been customary.

Airman Lewis was arraigned on November 5, 1992, and R.C.M. 707 (Manual for Courts–Martial, 1984, change 5) governs his case, too. As in *Shim* and *Vendivel*, no delay appears to have been requested in this case in time to stop the 120–day clock, and the clock began to run on the date on which these charges were preferred, R.C.M. 707(a)(1). It probably ran out in 1986, also long before the secretarial delays. Airman Lewis pleaded guilty, and he did not move for dismissal of the charges under R.C.M. 707(d).

On appeal, Airman Lewis assigned two errors, that the plea of guilty was improvident and that his sentence was inappropriate. Airman Vendivel submitted his case on its merits, with no errors assigned.[5] We asked appellate counsel in both cases for briefs on specified issues, and now, with the benefit of those briefs, we address both cases.

## II. Application of R.C.M. 707

■ The present R.C.M. 707 is a cut-and-dried rule. Indeed, it seems to have been deliberately crafted to be almost mechanical. *See generally* Eric D. Placke, *R.C.M. 707 and the New Speedy Trial Rules*, 18 A.F. JAG RPTR. 1 (December 1991); Tarik M. Radwan, *A New Speedy Trial Rule ...*, 18 A.F. JAG RPTR. 10 (December 1991). At its fundamentalist heart is a simple equation: If more than 120 days pass after preferral and before trial, the charges are dismissible on motion. R.C.M. 707(a), (d). There is only one qualification: Delays approved by a military judge or by a convening authority may be excluded. R.C.M. 707(c).

We need not speculate at all to apply the 120–day calculation, and we can tell that it

is extremely unlikely that there were enough excludable delays to save these cases.

First we address delays granted by a military judge. These cases did not even get to Article 32 investigations before 120 days passed, and they were not referred for years after the preferral. We view with astronomical probability—near certainty—our conclusion that no military judge ever got jurisdiction over the cases in time to save them. *See* Articles 26(a) & 39(a), UCMJ, 10 U.S.C. §§ 826(a) & 839(a) (1988).

■ That leaves only the convening authority to consider. The records show that the charges in these cases were forwarded by the preferring commanders to the summary court-martial convening authorities. In addition, we take notice of the ancient tradition in Air Force practice that the charges would then be filed in the absentee's personnel records. *See* Air Force Regulation 111–1, *Military Justice Guide*, paragraph 4–10 (30 September 1988); Air Force Regulation 35–73, *Desertion and Unauthorized Absence*, paragraph 9b(3) (10 May 1989). Radwan refers to this practice, 18 A.F. JAG RPTR. at 11. However, we find nothing in the records to record that any convening authority approved a delay in either case at a time early enough to save these charges.

In the era before the present R.C.M. 707, there were few reasons in Air Force practice to ask a convening authority to approve a pretrial delay.[6] We take notice that delays are often asked in the Article 32 investigation, but that is the first point at which we have seen the practice, and the Article 32 investigations in these cases

---

5. His counsel noted the possible applicability of *Shim* and the waiver of that complaint by the pleas of guilty and silence below. We appreciate such professional efforts at assessing the merits of an error and noting the likely result. It says nothing of counsel's ability that we have now come to a different conclusion. Indeed, it was her note that caused us to ponder the issue in Airman Vendivel's case. That then led to a search for other cases in a similar posture. We found only one, Airman Lewis' case.

6. Article 33, UCMJ, 10 U.S.C. § 833 (1988), requires that a case destined for trial by a general court-martial be forwarded to the convening authority within 8 days. If that cannot be done, an explanation is required. No approval seems to be required. We need not resolve that issue, for Article 33 applies only to cases in which the accused is held prisoner. Airmen Lewis and Vendivel were at large.

were done in 1992. No delay approved at that point would have helped.

Thus, we conclude that these charges were almost certainly dismissible under R.C.M. 707 and *Shim.*

III. Waiver Under R.C.M. 707 and 905(e)

■ General speedy trial rights can be waived. *United States v. Hounshell,* 7 U.S.C.M.A. 3, 21 C.M.R. 129 (1956). Even presumptive violations of Article 10, UCMJ, 10 U.S.C. § 810 (1988), under *United States v. Burton,* 21 U.S.C.M.A. 112, 44 C.M.R. 166 (1971), can be waived by failure to raise them at trial. *United States v. Sloan,* 22 U.S.C.M.A. 587, 48 C.M.R. 211 (1974). The discussion which accompanies R.C.M. 707(e) warns that speedy trial issues can be waived by failure to raise them at trial, and the two rules to which it refers, R.C.M. 905(e) and 907(b)(2), provide for that result. They preceded the current R.C.M. 707. All three rules are Executive creations, and we conclude that R.C.M. 707 was intended to fit in among the other rules as part of the system for which they provide. We infer that the President fully intended that the waiver rules would apply to it. Therefore, the R.C.M. 707 violations were waived in both these cases by the failure of the defense to raise the matter at trial. No relief is now warranted unless there is some reason to relieve Airmen Lewis and Vendivel of the consequences of their waivers.

IV. Relief From Waiver For Plain Error

■ There is some authority for the idea that we are not bound by such a waiver. *United States v. Britton,* 26 M.J. 24, 27 (C.M.A.1988) (dealing with the prior R.C.M. 707); *see also United States v. Claxton,* 32 M.J. 159, 162 (C.M.A.1991) (carte blanche to do justice); *United States v. Evans,* 28 M.J. 74 (C.M.A.1989) (waiver of hearsay objection); *see generally United States v. Parker,* 36 M.J. 269, 271 (C.M.A.1993) (difference between what a court of military review may do and must do). Furthermore, we conclude that we may not apply waiver when a violation of R.C.M. 707 constitutes plain error. *Claxton; Britton.* We find plain error.

A. Plain Error

The plain error analysis is ad hoc: It depends on the facts of the case under scrutiny. *United States v. Fisher,* 21 M.J. 327, 328 (C.M.A.1986). Plain error is "obvious and substantial," and the doctrine is invoked in cases in which the "fairness, integrity, or public reputation of judicial proceedings" is seriously affected. *Id.* Thus, to determine whether the R.C.M. 707 violation was plain error, we must look in more detail at the impact of the issue in the two cases.

B. Retroactivity?

The government has argued to us that we applied R.C.M. 707 retroactively in *Shim,* with the implication that there could not have been any error, much less plain error, at the trial in these cases if R.C.M. 707 had not yet become applicable to them. That is true only in a colloquial sense. Instead, we held in *Shim* that Executive Order 12,767 tells us clearly how to apply the rule. It was equally clear and equally effective on the days on which Airmen Lewis and Vendivel were tried. There is no retroactivity involved in our decision in *Shim.* One might characterize the President's choice of effective date provisions as providing a benefit to cases preferred before the date of the executive order, but that is a matter of policy within the President's discretion, and none of our business. Our review of the applicability of Executive Order 12,767 ends at § 4d, for it is clear and requires no interpretation. *Cf. United States v. Leonard,* 21 M.J. 67 (C.M.A.1985). Thus, it does no good to argue that *Shim* had not been decided when these cases were tried: The President's intent had already been clearly declared, and it was easy to ascertain. This error would have been "obvious," had the parties examined the effective date provisions of Executive Order 12,767. If it was error in *Shim,* it was also error in any other case "in which arraignment occur[ed] on or after July 6, 1991." Exec. Order No. 12,767 § 4d.

C. Constitutional Error: Denial of Speedy Trial

A violation of constitutional due process warrants a dismissal with prejudice under

R.C.M. 707(d). It is likely that mistaken omission of relief under R.C.M. 707 from constitutional error would constitute plain error. Thus, we turn first to whether these cases involved a denial of the constitutional right to a speedy trial.

Analysis of the due process right to speedy trial has recently been demonstrated in *Doggett v. United States*, 500 U.S. ——, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992), which applied the four factors attributed to *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972):

> Whether the delay before trial was uncommonly long, whether the government or the criminal is to blame for that delay, whether, in due course, the defendant asserted his right to a speedy trial, and whether he suffered prejudice as the delay's result.

*Doggett*, 500 U.S. at ——, 112 S.Ct. at 2690. *See also United States v. Grom*, 21 M.J. 53 (1985).

It appears from the record that while the delay was, indeed, uncommonly long in both these cases, that was entirely the fault of Airmen Lewis and Vendivel. Once they were back in military control, their trials followed promptly. There is no suggestion in the record that either asserted his speedy trial rights at all, and certainly no suggestion that either did so while a fugitive. If either suffered any prejudice from the delay, it is not apparent from the record. Both may have suffered anxiety, but that would have been the product of being a fugitive and therefore self-inflicted, not the result of lethargic prosecution. We hold that the trial of the charges against them in violation of R.C.M. 707 did not constitute constitutional error. In that sense, it was not plain error to try these cases in violation of R.C.M. 707. *See Fisher*, 21 M.J. at 328.

## D. Dismissal and the Statute of Limitations

However, that is not the end of our plain error analysis. The appropriate relief under R.C.M. 707(d) is a dismissal (though without prejudice) even if no constitutional error is found. *Any* dismissal would presumably require preferral of the charge anew, and the newly preferred charge would likely be barred by the statute of limitations. *United States v. Salter*, 20 M.J. 116, 117 (C.M.A.1985); *United States v. Arsneault*, 6 M.J. 182 (C.M.A.1979); *United States v. Rodgers*, 8 U.S.C.M.A. 226, 24 C.M.R. 36, 38–41 (1957). Thus, simply omitting to raise this seemingly doomed issue abandoned in both cases what might have been a complete shield to the desertion prosecutions under either the original or any successor charge sheet: The old one was barred by the 120–day rule, and any new one might be barred by the statute of limitations.[7] This makes the error "substantial."

After considering the effect of the statute of limitations on these cases, we now return to relief from the waiver for plain error. As the defense notes, plain error includes those errors that would "seriously affect the fairness, integrity or public reputation of judicial proceedings." *Fisher*, 21 M.J. at 328, quoting *United States v. Atkinson*, 297 U.S. 157, 160, 56 S.Ct. 391, 392, 80 L.Ed. 555 (1936). It seems readily apparent to us that these charges were almost certainly dismissible on motion under R.C.M. 707 and that any successor prosecutions would almost certainly have been barred by the statute of limitations. It also seems readily apparent that the parties overlooked both parts of that conclusion and that any waiver was assuredly neither knowing nor intelligent. The difference in the outcomes between what was and what should have been is too striking to have other than a serious effect on the reputation of these proceedings. We hold

---

**7.** The statute of limitations seems to have a remarkably favored position in our law, so much so that a military judge is required to inform an apparently uninformed accused of the availability of the statutory bar. *United States v. Salter*, 20 M.J. 116, 117 (C.M.A.1985);

*United States v. Rodgers*, 8 U.S.C.M.A. 226, 24 C.M.R. 36, 38 (1957). This special status has been of considerable import to us as we have worked our way through the issue in these two cases.

that it was plain error to proceed to trial in these cases despite the violation of R.C.M. 707 where a successive prosecution on successor charges would almost certainly have been barred by the statute of limitations.

## V. Remand

However, we do not presume to decide these matters conclusively now. Remote as the possibility might be, perhaps there were pretrial periods in these cases that were excludable under R.C.M. 707, and perhaps dismissal was not so inevitable as it seems. We recognize that the protection of the statute of limitations may be waived, and perhaps these appellants intended to do so. Accordingly, we will remand these cases for further, separate fact-finding. *See United States v. Shafer,* 36 M.J. 61 (C.M.A.1992) (order).

These cases shall be returned to their respective convening authorities. Each shall order a post-trial session, unless either finds such a session to be impracticable.[8]

The military judge at such a post-trial session shall upon motion hear evidence, enter findings of fact, and decide whether dismissal of the charges is required by R.C.M. 707. We leave to the military judge's discretion whether to dismiss the charges and, if the military judge elects to dismiss them, whether such a dismissal shall be with or without prejudice.

If the charges in Airman Lewis' case are dismissed, the record in that case need not be returned to this Court for further review, but the convening authority shall forward and appellate counsel for the United States shall promptly file a copy of the promulgating order. If the charges in Airman Lewis' case are not dismissed, the record in that case must be returned to this Court for further review.[9] Airman Vendivel's case must be returned for further review regardless whether the charges are dismissed.[10]

Senior Judge LEONARD concurs.

JOHNSON, Judge dissenting:

I agree with the majority that in these two cases the failure of the defense at trial to raise any speedy trial complaint waived the R.C.M. 707 issue. I dissent from the majority's action in relieving these two appellants of the consequences of their waivers on the basis that the military judges in these cases committed plain error in not raising the issue *sua sponte,* and I do not join in the majority's order returning these cases for further trial proceedings.

Our decision in *United States v. Shim,* 36 M.J. 1124 (A.F.C.M.R.1993), which held that the revised speedy trial rules in Change 5 to the Manual for Courts–Martial (1984) applied fully to all cases in which arraignment occurred on or after 6 July 1991, caught many military justice practitioners by surprise. Among those who did not anticipate that result were four of the five military judges who presided over the trials of the first five cases presenting this issue that have reached this Court.[11]

---

8. If the convening authority in either case finds a post-trial session to be impracticable, the convening authority shall set aside the findings and the sentence. In that event in Airman Lewis' case, the record need not be returned to this Court for further review, but the convening authority shall forward and appellate counsel for the United States shall promptly file a copy of the promulgating order. Airman Vendivel brings to our attention the possibility that he would be entitled to sentence relief in such an instance. If the convening authority in that case elects to set aside the findings and sentence, he may address that issue. Because of the remote possibility that relief fashioned by the convening authority might be inadequate, Airman Vendivel's case shall be returned to this Court for further review regardless of the outcome upon remand.

9. Airman Lewis moved for oral argument on this appeal but before we brought our attention to the present issues. We granted that motion, but our disposition makes a hearing unnecessary. On reconsideration of that motion, it is denied. Should Airman Lewis' case return for further review, leave is granted to the parties to move anew for a hearing for oral argument.

10. See note 8, *supra.*

11. *Shim, id.; United States v. Powell,* Misc.Dkt. 93–06, 1993 WL 135938 (A.F.C.M.R. 26 April 1993); *United States v. Smith,* ACM 29864 (A.F.C.M.R. 15 April 1993); and the two cases at bar.

**860**

I do not find this surprising, since I do not share the view of the majority that the result in *Shim* was "obvious." [12] Military justice practitioners are quite familiar with the fact that the United States Court of Military Appeals came to the opposite conclusion concerning the retroactive effect of the 1984 version of R.C.M. 707. *United States v. King*, 30 M.J. 59, 63 n. 6 (C.M.A. 1990); *United States v. Leonard*, 21 M.J. 67 (C.M.A.1985). In deciding *Shim* we ultimately decided these precedents were not controlling, but they were clearly relied upon by many practitioners in applying the Change 5 version of R.C.M. 707.

Furthermore, there is the question of what meaning to give to the word "only" in Section 4(d) of Executive Order 12767, which promulgated Change 5: "The amendments made to Rules for Courts–Martial 707 and 1010 shall apply *only* to cases in which arraignment occurs on or after 6 July 1991." (emphasis added). In *Shim* we concluded this language does not support an inference that the drafters intended that R.C.M. 707 revisions in Change 5 were to be applied only to charges *preferred* after 6 July 1991, or an inference that only periods of time after 6 July 1991 would count in calculations of elapsed time under the revised R.C.M. 707. We reached this conclusion, however, only after having had the benefit of reading the arguments made by counsel at trial and having studied the briefs of appellate counsel for both sides.

In addition, The Judge Advocate General of the Air Force is apparently not convinced of the obvious nature of our holding in *Shim*, since he has certified the issue of its correctness *vel non* to the United States Court of Military Appeals under Article 67(a)(2), UCMJ.[13]

The majority has also found this is a "substantial" issue by gratuitously predicting the probable outcome of the statute of limitations issues that would be raised in lengthy-absence cases if it becomes settled law that the revised R.C.M. 707 requires

dismissal of the original charges. However, as we noted in *Shim*, 36 M.J. at 1127 n. 5, none of these issues were litigated in any of the five cases we have decided at this point involving Change 5's revisions to R.C.M. 707, and no statute of limitations issue has been ripe for our decision in any of them. It remains entirely possible that the appellate courts may yet discover a way to interpret Change 5's speedy trial and statute of limitations rules in a manner that produces coherent and rational results, which is one of the primary tasks of an appellate court in interpreting statutes and executive orders.

It is even possible that the Court of Military Appeals will take this occasion to reexamine its ancient and dubious holding that unauthorized absence and desertion are not continuing offenses for purposes of the statute of limitations. *United States v. Jackson*, 20 M.J. 83, 84 (C.M.A.1985); *United States v. Francis*, 15 M.J. 424, 427 (C.M.A.1983); *United States v. Emerson*, 1 C.M.R. 43 (C.M.A.1951). In short, I regard the outcome of the statute of limitations issues as completely speculative at this juncture, and I would not engage in any presumption, as the majority does, that these appellants would probably prevail on them.

The effect of the majority's holding is to extend the effect of a decision of this Court on a procedural matter retroactively to two appellants who did not raise the issue at their trials. I do not regard this as sound policy in the absence of evidence indicating a denial of military due process or manifest injustice. *See United States v. Sloan*, 22 U.S.C.M.A. 588, 48 C.M.R. 211 (1974).

---

**12.** For the same reasons underlying my conclusion that the military judge did not commit "plain error," I would find these appellants were not denied the effective assistance of counsel.

**13.** We understand our decisions in *Shim, Powell*, and *Smith* were all certified to the Court of Military Appeals on 17 May 1993.