UNITED STATES, Appellee,

v.

Lieutenant Colonel Larry W. CALLAWAY, 260–58–4205, United States Army, Appellant.

CM 446824.

U.S. Army Court of Military Review.

21 Jan. 1986.

772

For Appellant: Captain Richard J. Anderson, JAGC (argued); Lieutenant Colonel Paul J. Luedtke, JAGC, Major John E. King, JAGC (on brief).

For Appellee: Captain Joseph P. Falcone, JAGC (argued); Colonel James Kucera, JAGC, Lieutenant Colonel Joseph A. Rehyansky, JAGC (on brief).

Before MARDEN, PAULEY, and De GIULIO, Appellate Military Judges.

OPINION OF THE COURT

De GIULIO, Judge:

Pursuant to pleas entered in accordance with a pretrial agreement, appellant was found guilty by a military judge sitting as a general court-martial of two specifications of adultery, two specifications of conduct unbecoming an officer and a gentleman and two specifications of fraternization, in violation of Articles 133 and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 933 and 934 [hereinafter cited as UCMJ]. He was sentenced to a dismissal from the United States Army. The convening authority approved the sentence.

Appellant was a Professor of Military Science and Tactics (PMST) for the Reserve Officers Training Corps (ROTC) at a university in Ohio. During the summer of 1983, he was assigned duties as a battalion tactical officer for an advanced ROTC camp at Fort Lewis, Washington. The appellant was responsible for the training and evaluation of ROTC cadets, who made up the battalion, and for the supervision of the military personnel assigned as cadre to the battalion. In effect, the appellant served as a commander. A newly commissioned female officer, Second Lieutenant (2LT) T

was assigned to work directly for appellant as an "aide" and training officer. During the fifth week of camp, the battalion cadre had a barbecue at the battalion executive officer's home. After the barbecue, appellant stated there would be a "staff call" at a local inn. At the inn appellant bought 2LT T several drinks with the intention of initiating a sexual relationship with her. Two other officers and a master sergeant attended the "staff call" at the inn. They remained at the bar until it closed and thereafter went to another bar. Appellant bought a round of drinks at this bar. Subsequent to the "staff call", two female lieutenants, two male master sergeants, appellant, and 2LT T returned to the battalion executive officer's home. Each of the lieutenants went to a separate bedroom with one of the master sergeants to sleep together. Appellant and 2LT T went to a third bedroom where they had sexual intercourse at the urging of appellant and remained the night. All personnel, except one of the lieutenants, were under the direct control and supervision of the appellant. The next morning everyone was awakened by appellant. He and 2LT T returned to Fort Lewis. Later, appellant and 2LT T returned to the battalion executive officer's house to help clean up. While there, they again had sexual intercourse at appellant's suggestion. The other two female lieutenants and the master sergeants were again present at the house. On another occasion the lieutenants, the two noncommissioned officers, and appellant went drinking together at an inn in the civilian community. At the house and bars appellant dealt with those accompanying him on terms of social equality. Appellant had sexual intercourse with 2LT T on two other occasions at his BOQ, once during duty hours. Second Lieutenant T, in a pretrial statement, indicated that she felt victimized by appellant, that she later informed him that she did not wish to go out with him and thereafter avoided his company on and off duty.

During the summer of 1984, appellant again was assigned duties as a battalion tactical officer at the ROTC advanced camp at Fort Lewis, Washington. A recent college graduate and newly commissioned female officer, 2LT M. was assigned to appellant's battalion. She was invited to dinner by appellant and had a date with him on 9 June 1984. Between 10 June and 27 June 1984, appellant publicly dated 2LT M, and they had sexual intercourse in his BOQ room on several occasions. Other officers living in the BOQ became aware that appellant and 2LT M were having sex in appellant's BOQ room. Upon hearing of the relationship, the camp commandant ordered an investigation. At the start of the relationship, appellant falsely led 2LT M. to believe that he had been divorced for eight years. She continued to believe he was divorced until the investigation of the offenses which resulted in the charges. She stated that she would not have entered into the sexual relationship if she had been aware that appellant was married.

## I

Appellant entered into a pretrial agreement to plead guilty to some of the offenses charged, provided that the convening authority would approve no more than 30 days confinement; instruct the trial counsel not to offer evidence on words excepted from the charges and specifications or to other specifications to which appellant pleaded not guilty; and, instruct trial counsel not to call 2LT T except in direct rebuttal of evidence presented by appellant. One of the offenses which was dismissed as a result of the agreement was an allegation that appellant raped 2LT T and appellant apparently felt, with some justification, that any testimony by 2LT T might have an adverse effect on his behalf. In exchange for these substantial concessions, appellant agreed to require the government to produce only one witness not in the immediate geographical area. It is the latter provision which causes appellant to urge that his pleas of guilty were improvident because he believes that the pretrial agreement deprived him of the substantial right to a complete sentencing proceeding.

■ To be valid, a pretrial agreement must adhere to the basic notions of fundamental fairness. *United States v. Partin,* 7 M.J. 409, 412 (C.M.A.1979). A pretrial agreement may not include a provision which denies a fair hearing, even if the hearing is limited by the plea to matters other than guilt or innocence of the accused. *United States v. Holland,* 1 M.J. 58 (C.M.A.1975). Thus, a pretrial agreement cannot prevent the presentation of non-jurisdictional motions prior to pleas,[1] inhibit the accused from exercising his appellate rights,[2] or require the accused to waive his right to hire civilian counsel or have individual military counsel.[3] Certain rights can be bargained away, however, to conserve time, money and effort. *United States v. Sharper,* 17 M.J. 803 (A.C.M.R. 1984). More complex pretrial agreements are acceptable when the complexity emanates from appellant. *See United States v. Schaffer,* 12 M.J. 425, 428 (C.M.A.1982); *United States v. Jones,* 20 M.J. 853 (A.C.M.R.1985).

■ The question to be determined in this case is whether a pretrial agreement provision which requires the government to produce only one "out-of-the-area" witness violates a fundamental right which abridges a fair trial. We find that it does not. In *United States v. West,* 13 M.J. 800 (A.C.M. R.), *pet. denied,* 14 M.J. 215 (C.M.A.1982), a provision whereby an accused agreed to waive personal appearance of a witness was upheld as a proper subject of a pretrial agreement. A pretrial agreement which waives the personal appearance of character witnesses is not against public policy. *United States v. Krautheim,* 10 M.J. 763 (N.C.M.R.1981); *United States v. Hanna,* 4 M.J. 938, 940 (N.C.M.R.), *pet. denied,* 5 M.J. 252 (C.M.A.1978). The provisions of RCM 1001(e)(1) and (2), Manual for Courts-Martial, 1984, do not require production of witnesses in presentencing proceedings.[4] Further, it is a permissible condition for the accused to offer in a pretrial agreement to waive the opportunity to obtain the personal appearance of witnesses at sentencing proceedings. RCM 705(c)(2)(E), MCM 1984.[5] It is clear that restricting the num-

---

1. *United States v. Holland,* 1 M.J. 58.

2. *United States v. Mills,* 12 M.J. 1 (C.M.A.1981).

3. *United States v. Marsters,* 49 C.M.R. 495 (C.G. C.M.R.1974).

4. RCM 1001(e)(1) and (2) provide, in pertinent part:

(e) Production of Witnesses.

(1) In general. During the presentence proceedings, there shall be much greater latitude than on the merits to receive information by means other than testimony presented through the personal appearance of witnesses. Whether a witness shall be produced to testify during presentence proceedings is a matter within the discretion of the military judge, subject to the limitations in subsection (e)(2) of this rule.

(2) Limitations. A witness may be produced to testify during presentence proceedings through a subpoena or travel orders at Government expense only if—

(A) The testimony expected to be offered by the witness is necessary for consideration of a matter of substantial significance to a determination of an appropriate sentence, including evidence necessary to resolve an alleged inaccuracy or dispute as to a material fact;

(B) The weight or credibility of the testimony is of substantial significance to the determination of an appropriate sentence;

(C) The other party refuses to enter into a stipulation of fact containing the matters to which the witness is expected to testify, except in an extraordinary case when such a stipulation of fact would be an insufficient substitute for the testimony;

(D) Other forms of evidence, such as oral depositions, written interrogatories, or former testimony would not be sufficient to meet the needs of the court-martial in the determination of an appropriate sentence; and

(E) The significance of the personal appearance of the witness to the determination of an appropriate sentence, when balanced against the practical difficulties of producing the witness, favors production of the witness. Factors to be considered include the costs of producing the witness, the timing of the request for production of the witness, the potential delay in the presentencing proceeding that may be caused by the production of the witness, and the likelihood of significant interference with military operational deployment, mission accomplishment, or essential training.

5. RCM 705(c)(2)(E), MCM 1984, provides that a permissible provision of a pretrial agreement is, "A promise to waive procedural requirements such as an Article 32 investigation, the right to trial by court-martial composed of members or the right to request trial by military judge alone,

ber of witnesses or the method in which their testimony is presented at trial is not prohibited.

In this case, appellant was not precluded from producing evidence in extenuation or mitigation. In fact, letters, statements and other documents presented on his behalf are voluminous and represent part of the record of trial approximately an inch thick. The pretrial agreement originated with the appellant, and he received substantial concessions from the government in exchange for his part of the bargain. Presentation of evidence on the charges which were dismissed and on language deleted from certain specifications could have been devastating to appellant as would the appearance of 2LT T as a witness in aggravation. Having received the best of the bargain, appellant should not be heard to complain that he was unfairly treated. Therefore, in the case before us, we find that appellant's pleas were provident, and the agreement to produce only one "out-of-the-area" witness did not abridge the appellant's right to a fair hearing.

## II

■ Appellant contends and the government concedes that the military judge erred by denying the defense motion to consolidate Specification 1 of Charge III (adultery) and the Specification of Charge IV (conduct unbecoming an officer by lying about his marital status) because the conduct unbecoming an officer was the means of accomplishing the adultery. We agree and believe that consolidation of the two specifications is appropriate. *See United States v. Huggins*, 17 M.J. 345 (C.M.A. 1984) (summary disposition). We will consolidate the specifications and affirm the finding of guilty as concerns adultery. We find that appellant suffered no prejudice with regard to sentence because of this error.

or the opportunity to obtain the personal appearance of witnesses at sentencing proceedings."

## III

■ Appellant was also charged with "wrongfully failing to conduct himself as an officer and gentleman by fraternizing on terms of military equality with and having a social relationship with 2LT T, a newly commissioned officer under his direct command and supervision, in violation of the customs and traditions of the Armed Forces and to the disgrace of the Army."[6] Appellant alleges that his plea of guilty to fraternization with a female officer was improvident because the specification fails to state a criminal offense, the military judge failed to ensure the appellant understood the elements, appellant did not demonstrate a belief in his own guilt, and appellant did not admit facts constituting a criminal offense.

■ Although inartfully drafted, we believe that the specification, as alleged, states an offense. The use of the term "social relationship" in the specification might have been clarified. No doubt a motion to make more definite and certain, if made, would have been favorably considered. However, the test for sufficiency of the allegation is not whether it can be made more definite and certain, but whether it contains the elements of the offense intended to be charged, apprises the accused of what he must be prepared to meet and whether other proceedings for the same offense are barred. *United States v. Sell*, 11 C.M.R. 202 (C.M.A.1953). Where a pleading has not been attacked at trial, as in the case before us, it is sufficient to withstand a broadside charge on appeal that it does not state an offense, if the necessary facts appear in any form, or by fair construction can be found within the terms of the specification. *United States v. Stevens*, 19 M.J. 284 (C.M.A.1985). Every essential element of the offense must be alleged directly or by clear implication. *United States v. Fout*, 13 C.M.R. 121, 124 (C.M.A.1953). The specification

6. At trial the offense of adultery and this offense were considered multiplicious for sentencing purposes.

must also allege the criminal nature of the misconduct. *United States v. Brice,* 38 C.M.R. 134 (C.M.A.1967). Where an act is not in itself an offense, but is made so by statute, regulation or custom, words of criminality are required. *Id.* at 138. Here, the conduct of appellant is proscribed by regulation and custom and thus the term "wrongfully" sufficiently alleges the criminal nature of the misconduct. *See United States v. Brice,* 38 C.M.R. 134. Further, in Article 133 offenses,

> It is unnecessary that the conduct amount to an offense otherwise, but "it must offend so seriously against law, justice, morality or decorum, as to expose to the disgrace, socially, or as a man, the offender, and at the same time must be of such a nature or committed under such circumstances as to bring dishonor or disrepute upon the military profession which he represents."

*United States v. Jefferson,* 14 M.J. 806, 808–809 (A.C.M.R.1982), *pet. granted,* 15 M.J. 328 (C.M.A.1983), citing W. Winthrop, *Military Law and Precedents,* 711–12 (2d ed., 1920 reprint). Evidence that appellant's misconduct was of such a nature is evidenced by a contemporary approaching appellant and telling him that his conduct with 2LT T was unacceptable and unprofessional.[7] Additionally, in order for the allegation to be sufficient, it also must place the accused on notice of the offense against which he must defend and must protect him against further prosecution for the same offense. *United States v. Curtiss,* 42 C.M.R. 4 (C.M.A.1970); *United States v. Marker,* 3 C.M.R. 127, 134 (C.M.A.1952). Information in the providence inquiry and the stipulation of fact may be used to determine if appellant was given sufficient notice. *United States v. Schwarz,* 15 M.J. 109, 111 (C.M.A.1983); *United States v. Foster,* 14 M.J. 246, 249 (C.M.A.1982); *United States v. Locke,* 16 M.J. 763, 765 (A.C.M.R.1983). Information

from the providence inquiry makes it clear that after the military judge deleted language concerning sexual intercourse from the specification, the appellant recognized that the "social relationship" in the specification amounted to a wrongful public relationship with a subordinate, i.e., "dating", and that the subordinate was under appellant's command and supervision. We find that the appellant was provided notice of the criminal offense against which he must defend, and the allegation was sufficient to provide a bar against further prosecution for the same offense.

Now we turn to the question of whether, under the circumstances alleged, the social relationship of dating between an officer and a subordinate officer who is under his command and supervision can constitute the offense of fraternization. While the criminal offense of fraternization historically proscribes an improper relationship between an officer and enlisted soldier, certain relationships between officers may be recognized as the criminal offense of fraternization.[8]

Although fraternization has long been recognized as an offense, for the first time a model specification for fraternization is set forth under Article 134, UCMJ, part IV, para 83, MCM 1984. The analysis of the fraternization provision states:

> This paragraph is new to the Manual for Courts-Martial, although the offense of fraternization is based on longstanding custom of the services ... Relationships between senior officers and junior officers and between noncommissioned or petty officers and their subordinates may, under some circumstances, be prejudicial to good order and discipline. This paragraph is not intended to preclude prosecution for such offenses.

MCM, App. 21, para. 83.

In the case before us, we are confronted with the practice of an officer dating anoth-

---

7. During the 1984 "precamp conference" held in January, appellant was approached by another lieutenant colonel, who was also a PMS & T, and was told that his conduct during the previ-

ous summer with 2LT T was, in the view of that officer, "unacceptable and unprofessional."

8. *United States v. Pitasi,* 44 C.M.R. 31 (C.M.A. 1971).

er officer, who is his military subordinate. Prior to the effective date of the MCM, 1984, we find that dating an officer who was a military subordinate was a violation of a custom of the service. AR 600–20, paragraph 5–7f (15 Oct 1980), which was applicable at the time of appellant's offenses, provides:

Relationships between servicemembers of different rank which involve (or give the appearance of) partiality, preferential treatment, or the improper use of rank or position for personal gain, are prejudicial to good order, discipline and high unit morale. Such relationships will be avoided. Commanders and supervisors will counsel or take other action, as appropriate, if relationships between service members of different rank (1) cause actual or perceived partiality or unfairness, (2) involve the improper use of rank or position for personal gain, or (3) can otherwise reasonably be expected to undermine discipline, authority, or morale.

The meaning of that paragraph was explained by the Adjutant General of the Army in a letter,[9] stating: "[Army Policy] is not directed only at officer-enlisted relationships between members of different ranks. It is an acknowledgement that any social, commercial or duty relationship may result in an impropriety." The regulatory provision merely sets forth evidence that a custom exists prohibiting certain improper relationships between superiors and subordinates. *But see United States v. Stocken,* 17 M.J. 826, 829 (A.C.M.R.1984). Appellant's conduct was perceived as unacceptable and unprofessional. Second Lieutenant T. believed appellant had taken advantage of her. Under these circumstances we find that a basis exists for an allegation of criminal fraternization.

Appellant maintains that having a social relationship is not a crime, citing *United States v. Johanns,* 20 M.J. 155 (C.M.A. 1985). This case can be distinguished from *United States v. Johanns.* In *Johanns,*

the Air Force Court of Review, using their fact finding powers, found that the custom against fraternization in the Air Force has been so eroded as to preclude criminal prosecution. We believe that the custom has not been so eroded in the Army. Further, it must be noted that in *Johanns,* the accused was neither the commander nor supervisor of the soldier. *Id.,* at 157. *United States v. Stocken,* 17 M.J. 826, can be distinguished in that no command or supervisory relationship existed between the parties involved.

Using our fact finding powers pursuant to Article 66(c), UCMJ, 10 U.S.C. § 866(i), we find that, at the time of appellant's offenses, a custom existed in the U.S. Army which proscribed a social relationship amounting to "dating" between an officer and another officer who was his military subordinate, where the senior officer occupies a position of command or supervision over the subordinate officer. Further, we find that by fair implication, such a relationship gives the appearance of partiality and undermines discipline, authority and morale.

■■■ Assuming, arguendo, that the specification did not allege fraternization, the acts alone are sufficient to constitute conduct unbecoming an officer without reliance on the concept of fraternization. The same acts which may be alleged using the *additional elements* of fraternization may be conduct unbecoming an officer and a gentleman without reliance upon the fraternization concept. *United States v. Johanns,* 20 M.J. 155 at 162–63 (C.M.A.1985), (Cox, J., concurring in part, concurring in the result in part). As Judge Cox noted, "There are certain standards of conduct expected of those who belong to the officer corps which are understood by them and which exceed the standards that apply to civilians [citations omitted]. Conduct that does not meet these standards, under certain circumstances, amounts to violations of Article 133." *Id.* at 162. The fraterni-

---

9. Adjutant General letter, dated 3 November 1984, subject: Fraternization and Regulatory Policy Regarding Relationships between Members of Different Ranks.

zation and custom of the service language can be treated as surplusage. *See* para. 74 *b*(2), Manual for Courts-Martial, United States, 1969 (Revised edition); *United States v. Cimoli*, 10 M.J. 516 (A.F.C.M.R. 1980). The surplus words can be excepted from the specification, leaving the acts alleged as conduct unbecoming an officer and a gentleman.

 Further, the record of trial demonstrates that the appellant's plea to this offense was provident. During the providence inquiry, after the military judge recited the elements of the offense, appellant admitted that he went drinking and dancing with 2LT T, that he socialized with her on terms of equality, that she was his subordinate under his direct command and supervision, that his conduct was unbecoming an officer and a gentleman. Appellant stated that he understood the terms of fraternization and conduct unbecoming an officer and a gentleman. Accordingly, we are satisfied that the military judge conducted a complete and proper inquiry. *United States v. Davenport*, 9 M.J. 364, 367 (C.M.A.1980); *United States v. Care*, 40 C.M.R. 247 (C.M.A.1969).

We find, therefore, that Specification 1 of Additional Charge III states a criminal offense, and that appellant's plea to that offense was provident.

## IV

Appellant urges, over government opposition, that the military judge erred by denying the defense motion to consolidate, for findings purposes, adultery with 2LT T (Specification 1, Additional Charge II) and the conduct unbecoming an officer and a gentleman by fraternizing (social relationship) with 2LT T. (Specification 1, Additional Charge III). It is contended that consolidation is required because the acts constituting conduct unbecoming an officer and a gentleman were the integral means of accomplishing adultery. We disagree.

This case can be distinguished from *United States v. Walker*, 21 M.J. 74 (C.M.A.1985), where the Court of Military Appeals held that conduct unbecoming an offi-cer and adultery were multiplicious for findings. In *Walker*, sexual intercourse between a female officer and a married male subordinate was alleged as part of the Article 133 offense. In the case before us, the military judge at trial carefully excepted from the specification any language relating to sexual intercourse. Here, the multiplicity problem present in *Walker* does not exist.

 Charges are multiplicious for findings if one charge necessarily includes all the elements of the other charge, or if the allegation of one fairly embraces all the elements of the other. *United States v. Baker*, 14 M.J. 361, 368 (C.M.A.1983). Specification 1, Additional Charge II, alleges that appellant, a married man, had sexual intercourse with 2LT T, a woman not his wife. Specification 1, Additional Charge III, fraternization, requires proof that appellant wrongfully fraternized on terms of military equality with a junior officer under his direct command and supervision, to his disgrace as an officer and a gentleman. It involves a superior-subordinate relationship. As discussed previously, the social relationship alleged in the fraternization specification is dating. One can date without committing adultery. Conversely, one can commit adultery without dating. The offense of fraternization, as alleged, does not include or embrace all the elements of the offense of adultery. *See United States v. Ridgeway*, 19 M.J. 681 (A.F.C.M.R.1984), *pet. denied*, 20 M.J. 133 (C.M.A.1985). In any event, the military judge treated the offenses as multiplicious for sentencing and no prejudice resulted.

## V

Appellant contends that his plea of guilty to Specification 2 of Additional Charge II (fraternization with senior noncommissioned officers) was improvident because the specification fails to state an offense, and alternately, because neither the appellant's admissions to the military judge nor the evidence of record objectively support the findings of guilty to the crime of fra-

ternization as a matter of law. We disagree.

This offense describes the long established military custom that officers will not associate with enlisted personnel on terms of military equality. Not every association between officers and enlisted personnel is fraternization. "Where it is shown that the acts and circumstances are such as to lead a reasonably prudent person, experienced in the problems of military leadership, to conclude that the good order and discipline of the armed forces has been prejudiced by the compromising of an enlisted person's respect for the integrity and gentlemanly obligations of an officer, there has been an offense under Article 134." *United States v. Free*, 14 C.M.R. 466, 470 (N.B.R.1953).

Unlike *Johanns*, the enlisted personnel and two of the officers involved in this case were under the appellant's command and supervision.[10] Moreover, unlike *Stoken*, which involved only enlisted personnel and no command or supervisory relationship, the case before us involves a direct superior-subordinate, officer-enlisted, relationship. In the U.S. Army, when officer-enlisted associations exceed the bonds of propriety, they may result in the offense of fraternization. *United States v. Conn*, 6 M.J. 351 (C.M.A.1979); *United States v. Livingston*, 8 C.M.R. 206 (A.B.R.1952); *United States v. King*, CM 440003 (A.C. M.R. 30 Apr. 1981) (unpub.); *United States v. Cooper*, CM 438700 (A.C.M.R. 11 Aug. 1980) (unpub.). Unlike *United States v. Johanns*, we find that, in the U.S. Army, the custom against fraternization has not been eroded and prosecution is not precluded.

 We are not persuaded by appellant's argument that his conduct should be compared to "Boss Night" or "Right Arm Night," the purpose of which is to enhance espirit de corps within a unit. Appellant's conduct far exceeds those lawfully recognized activities and greatly exceeds the bounds of propriety. We find appellant's conduct of drinking with enlisted personnel under his command and supervisory control, and his encouragement of sexual associations between officers and enlisted personnel by his own participation in sexual misconduct, to be clearly prejudicial to good order and discipline and of such a nature as to bring discredit upon the armed forces. We are satisfied that the specification meets the test of informing the accused of the offense against which he must defend, and eliminates the danger of placing him in jeopardy for the same offense. *See United States v. McCollum*, 13 M.J. 127, 130 (C.M.A.1982); *United States v. Marker*, 3 C.M.R. 127, 134 (C.M.A.1952); *United States v. Free*, 14 C.M.R. 466, 470. We find that the specification states an offense.

During the providence inquiry appellant admitted that the enlisted personnel were his direct subordinates, that he drank with them, that he treated them "like equals," that he breached the boundary between officers and enlisted personnel, that the senior enlisted personnel and lieutenants were also fraternizing, that his actions had the appearance of evil and that it undermined good order and discipline. The providence inquiry clearly established that appellant was aware of the offenses against which he must defend. *United States v. McCollum*, 13 M.J. 127; *United States v. Care*, 40 C.M.R. 247. We find the appellant's plea to this offense provident.

## VI

 Appellant submits that the offense of fraternization by drinking with enlisted personnel is multiplicious with the offense of conduct unbecoming an officer and a gentleman by tolerating, encouraging or permitting fraternization. We agree. *See United States v. Baker*, 14 M.J. 361. We shall, however, dismiss the offense of conduct unbecoming an officer and a gentleman by tolerating, encouraging, or permit-

---

**10.** In *United States v. Johanns*, 20 M.J. 155 at 157 (C.M.A.1985), quoting the Air Force Court of Review, the Court stated, "The accused was neither the commander nor supervisor of any of these members...."

ting fraternization (Specification 2, Additional Charge III). As a result we need not determine if the specification so dismissed alleges an offense. We find that appellant was not prejudiced because the offenses were considered multiplicious for sentencing at trial.

## VII

We will consolidate the adultery with 2LT M with the conduct unbecoming an officer by lying to 2LT M. We find the accused was not prejudiced by this action. The Specification of Charge IV is consolidated with Specification 1 of Charge III by adding after the word "wife," in Specification 1 of Charge III the words "such intercourse being induced by lying to her about his marital status." The Specification of Charge IV and Charge IV and Specification 2 of Additional Charge III are set aside and those specifications and charge are dismissed. The findings of guilty of Specification 1 of Charge III, as amended, and the remaining findings of guilty and the sentence are affirmed.

Senior Judge MARDEN and Judge PAULEY concur.

UNITED STATES, Appellee,