## UNITED STATES

### v.

**Robert F. SMITH, 249 31 7966 Equipment Operator Constructionman Recruit (E–1), U.S. Naval Reserve.**

**NMCM 91 0872R.**

U.S. Navy–Marine Corps Court of Military Review.

Sentence Adjudged 23 Nov. 1990.

Decided 9 April 1993.

Maj G.S. Warner, USMC, Appellate Defense Counsel.

LCDR Helen B. Thompson, JAGC, USN, Appellate Defense Counsel.

CAPT Fred W. Vacca, JAGC, USNR, Appellate Defense Counsel.

CDR Edward F. Ward, Jr., JAGC, USNR, Appellate Defense Counsel.

LT J.C. Foster, JAGC, USNR, Appellate Government Counsel.

Before LARSON, C.J., and STRICKLAND and ORR, Senior Judges.

ORR, Senior Judge:

This case has been returned to us for the continuation of our review under Article 66, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 866, following an earlier decision in which we returned the record of trial for a new staff judge advocate's or legal officer's post-trial recommendation because the earlier recommendation was prepared by someone who was not a commissioned officer. *See United States v. Smith*, 34 M.J. 894 (N.M.C.M.R.1992). Unlike the two earlier recommendations, however, a copy of the valid one, prepared by a commissioned officer, was not forwarded to the appellant as required by Rule for Courts–Martial (R.C.M.) 1106(f)(1) because the appellant had "been placed on appellate leave in Aiken, South Carolina." Legal Officer's letter of 6 July 1992. Instead, the accused's copy was served on the appellant's trial defense counsel. *Id.* The failure to attempt actual service on the appel-

lant is the basis for the first of the appellant's three assignments of error.[1]

Consistent with his pleas, the appellant was convicted of three unauthorized absences and of using marijuana in violation, respectively, of Articles 86 and 112a, UCMJ, 10 U.S.C. §§ 886, 912a. He was sentenced by the military judge sitting alone to confinement for 75 days, the forfeiture of $400.00 pay per month for 2 months, and a bad-conduct discharge. That sentence did not exceed the limits of the pretrial agreement that had been negotiated in this case, and the convening authority approved the sentence as adjudged.

## I.

■ As to the first assigned error, R.C.M. 1106(f)(1) states, in pertinent part: "If it is impracticable to serve the recommendation on the accused for reasons including but not limited to the transfer of the accused to a distant place ... the accused's copy [of the post-trial recommendation] shall be forwarded to the accused's defense counsel...." In this case, the convening authority appears to have been located in Gulfport, Mississippi, at the time the recommendation was prepared. The appellant had executed an appellate rights statement, which is attached to the record of trial and marked as Appellate Exhibit III, in which he stated he could be contacted at a specific mailing address in South Carolina. Rather than mailing a copy to the appellant in South Carolina, however, the appellant's copy was forwarded to his defense counsel in Rota, Spain, where the case was originally tried. To invoke the "distant place" exception to allow substituted service on the appellant's counsel vice the appellant, himself, in this situation highlights the absurdity of substituted service when the appellant appears to be within reach of the U.S. Postal Service. We conclude that it is *not* impracticable to send an accused his own copy of the post-trial recommendation when both the convening authority and the accused are located in the United States and the accused, as part of the record of trial, has provided a mailing address where he purports to be. Consequently, it was error in this case not to have sent the appellant his own copy.

■ The next question, however, is whether the appellant has suffered any prejudice as a result of this error. *United States v. Watkins*, 35 M.J. 709, 714–715 (N.M.C.M.R.1992). As in *Watkins*, the appellant does not suggest that he actually had matters to submit or that he was precluded from doing so when the convening authority acted before he had received a copy of the post-trial recommendation. We note that the trial in this case took place on 23 November 1990 and that the appellant failed to submit any matter under R.C.M. 1105 in response to either of the first two post-trial recommendations (which we subsequently held to be invalid because they were submitted by an individual who was not a commissioned officer) even though both indicate a copy of each respective recommendation was provided to the appellant. The third, and valid, recommendation

1.     I. THE CONVENING AUTHORITY HAS NOT YET PROPERLY APPROVED THE SENTENCE IN APPELLANT'S CASE SO AS TO PERMIT THIS COURT TO TAKE CONTINUED ACTION UNDER ARTICLE 66(c), UCMJ.
II. THE PROVIDENCE INQUIRY INTO SPECIFICATIONS 1 AND 2 OF CHARGE II WAS INADEQUATE TO SUPPORT GUILTY FINDINGS, IF THERE WERE ANY, IN LIGHT OF APPELLANT'S STATEMENT THAT HE REMAINED ON BOARD HIS UNIT DURING THE RELEVANT PERIODS.
III. THE MILITARY JUDGE FAILED TO ANNOUNCE FINDINGS CONCERNING THE SPECIFICATIONS OF CHARGE I; THE SPECIFICATIONS MUST BE DISMISSED.
IV. THE COURT–MARTIAL LACKED JURISDICTION BECAUSE THE MILITARY JUDGE WAS NOT APPOINTED TO A FIXED TERM OF OFFICE. (Citation omitted).
V. THE COURT–MARTIAL LACKED JURISDICTION BECAUSE THE MILITARY JUDGE WAS DESIGNATED IN VIOLATION OF THE APPOINTMENTS CLAUSE OF THE CONSTITUTION. (Citation omitted).
VI. THIS COURT DOES NOT HAVE POWER TO REVIEW THIS CASE BECAUSE ITS JUDGES ARE NOT APPOINTED TO A FIXED TERM OF OFFICE. (Citation omitted).
VII. THIS COURT HAS NO POWER TO REVIEW THIS CASE BECAUSE ITS JUDGES ARE DESIGNATED IN VIOLATION OF THE APPOINTMENTS CLAUSE OF THE CONSTITUTION. (Citation omitted).

was submitted on 6 July 1992, and the convening authority acted on 30 July 1992 after receiving the defense counsel's signed receipt, dated 14 July 1992, for both the defense counsel's and the appellant's copies of the recommendation. In addition to not sending any R.C.M. 1105 matters after the earlier recommendations were sent to him, the appellant's defense counsel signed an affidavit on 22 November 1991, a year after trial, in which he stated: "[T]hroughout my dealings with the accused it was portrayed to me that the most important thing for him [the appellant] was to get the court-martial proceedings completed so he could return home to his family as soon as possible and end the military chapter of his life." Attachment III to Government's Motion to Attach Documents of 10 December 1991.

Consequently, we conclude that the appellant has suffered no prejudice. *United States v. DeGrocco*, 23 M.J. 146 (C.M.A. 1987); *Watkins; United States v. Skaar*, 20 M.J. 836 (N.M.C.M.R.1985) (*en banc*); *cf. United States v. Pena*, 22 M.J. 281 (C.M.A.1986), *cert. denied*, 479 U.S. 1030, 107 S.Ct. 875, 93 L.Ed.2d 829 (1987) (failure to specify deficiency in post-trial review renders harmless failure to serve defense counsel with copy of review); *United States v. Smart*, 21 M.J. 15 (C.M.A.1985) (failure of defense counsel to specify defects in post-trial review waives right to timely service of review); *United States v. Barnette*, 21 M.J. 749 (N.M.C.M.R.1985) (absent claim that post-trial review was incorrect, deficient or misleading, failure to serve defense counsel was harmless). *But cf. United States v. Moseley*, 35 M.J. 481 (C.M.A.1992) (failure to serve post-trial review on defense counsel deprived accused of counsel at important stage of proceedings and required re-doing that stage).

## II.

In our earlier consideration of this case, we questioned whether the appellant's guilty pleas to two of the three unauthorized absence offenses were provident when the appellant revealed in the course of that inquiry that, after leaving his work place without authorization on two separate occasions, he returned to his unit's barracks where he remained for one period of about 37 days and another of about 24 days by hiding, for the most part, in another servicemember's room. In *United States v. Wargo*, 11 M.J. 501 (N.C.M.R. 1981), we held that Wargo could not be an unauthorized absentee from his unit, the Naval Station, San Diego, when he remained aboard that installation throughout his alleged absence by sleeping in his assigned barracks and otherwise being in the installation library because he had in fact never left his unit. Here, the appellant was assigned to a unit that was essentially a tenant activity aboard the naval installation at Gulfport, Mississippi. He stated that on both occasions, after leaving his work place with his unit aboard the installation, he went to his barracks, which he described as part of his unit, where he attempted to stay out of sight until he turned himself in to the Officer–of–the–Day. Record at 10–12, 13–14.

As we pointed out in *Wargo*, the problem is with the inception of the absence. It is not clear whether the appellant ever left the confines of his unit on these two occasions, and the doctrine of casual presence, which applies when trying to determine the termination of an unauthorized absence, has no application to the inception of the absence. 11 M.J. at 504. In *United States v. Phillips*, 28 M.J. 599 (N.M.C.M.R. 1989), we distinguished *Wargo* based on the fact that Phillips was not assigned to the installation but to a tenant command when he remained in his barracks and was subsequently charged with unauthorized absence from his unit. Although not fully discussed in our *Phillips* decision, it appears that the barracks where Phillips remained was not part of his assigned unit. 28 M.J. at 600. The question is not simply whether an accused, who is charged with absence from his unit, is assigned to a tenant activity or the host installation when he or she remains in the barracks rather than reporting for or remaining on duty. The question is which activity controls the barracks: e.g., what unit or activity assigns personnel to that barracks, posts

watches in that barracks, conducts inspections, or has the responsibility for ordering maintenance and repairs. In the present case, however, we have only the appellant's assertion that the barracks where he stayed belonged to his unit, and we are left without more to indicate whether the applicable precedent is *Wargo* or *Phillips*. Under these circumstances, we find the appellant's pleas to those two absence offenses to be improvident.

Although we have recently applied the rationale of *United States v. Felty*, 12 M.J. 438 (C.M.A.1982), to Article 86(3) offenses that were more properly Article 86(1) or 86(2) offenses, *United States v. Horton*, 36 M.J. 1039 (N.M.C.M.R.1993), the Article 86(3) offenses that were charged in that case were charged as absences from places of duty. In this case, the offenses were charged as absences from his unit. Consequently, the specifications do not identify any specific place of duty such as would be required in pleading an Article 86(1) or 86(2) offense, and the providence inquiry only establishes that the appellant "walked off the job" on both occasions, once about 1530–1600 and the other at sometime after quarters but before noon. Record at 10, 13. We do not find enough information in this record from which to conclude that there was only a technical variance between these two specifications as Article 86(3) offenses and Article 86(2) offenses or that, as Article 86(2) offenses, the appellant either was apprised of what he had to defend against or would be protected from double jeopardy. *See United States v. Scardina*, 18 M.J. 571 (N.M.C.M.R.1984). In addition, the maximum punishments between these offenses charged as Article 86(3) offenses and as Article 86(2) offenses are not the same. *United States v. Epps*, 25 M.J. 319, 323 (C.M.A.1987); *Felty*, 12 M.J. at 442.

### III.

We raised another issue in our previous consideration of this case concerning the failure of the military judge to announce findings concerning each of the three specifications under the charge of violating Article 86 (Charge I).[2] The judge stated that, in accordance with the appellant's pleas, he found the appellant guilty of Charge I, of Specification 1 of the Additional Charge, and of the Additional Charge. Record at 27. Nothing was said about his findings concerning the three specifications under Charge I. As a result of our disposition of the first two specifications under Charge I as discussed above, this issue now concerns only the third specification remaining under that charge. We conclude that the appellant has suffered no prejudice as a result of the military judge's error. *See United States v. Davie*, 18 M.J. 598 (N.M.C.M.R.), *petition denied*, 19 M.J. 121 (C.M.A.1984).

Accordingly, the findings of guilty of Specifications 1 and 2 of Charge I are set aside, and those specifications are dismissed. The remaining findings of guilty are affirmed. Applying the principles of *United States v. Sales*, 22 M.J. 305 (C.M.A. 1986), we have reassessed the sentence, and particularly in light of the appellant's previous punishment for using a controlled substance, we affirm the sentence approved on review below.

Chief Judge LARSON and Senior Judge STRICKLAND concur.

---

**2.** The appellant was arraigned on three charges: Charge I, with three specifications, alleged violations of Article 86; Charge II alleged a single violation of Article 121, 10 U.S.C. § 921; and an Additional Charge alleging two violations of Article 112a. The Government withdrew Charge II and its specification and the second specification under the Additional Charge just prior to the announcement of findings. Record at 27.