UNITED STATES

v.

Jaime J. PINERO, Cryptologic Technician Administrative Second Class (E–5), U.S. Navy.

NMCM 200101373.

U.S. Navy–Marine Corps Court of Criminal Appeals.

Sentence Adjudged 2 Feb. 2001.

Decided 14 Jan. 2003.

Maj Charles C. Hale, USMC, Appellate Defense Counsel.

LT Frank L. Gatto, JAGC, USNR, Appellate Government Counsel.

HARRIS, Judge, delivered the opinion of the Court in which LEO, Chief Judge, OLIVER, Senior Judge, FINNIE, Senior Judge, and CARVER, Judge, concur. VILLEMEZ, Judge, filed a concurring opinion. BRYANT, Judge, filed an opinion concurring in part and dissenting in part, with PRICE, Senior Judge, and RITTER, Judge, joining.

Before the Court *En Banc.*

HARRIS, Judge:

In accordance with mixed pleas, Appellant was convicted by a military judge sitting as a special court-martial of unauthorized absence terminated by apprehension, multiple uses of methamphetamine, and multiple uses of marijuana, in violation of Articles 86 and 112a, Uniform Code of Military Justice, 10 U.S.C. §§ 886 and 912a. He was sentenced to a bad-conduct discharge, reduction to pay grade E–1, and confinement for 72 days. The convening authority approved the findings and sentence. A pretrial agreement had no effect on the sentence.

We have carefully reviewed the record of trial, Appellant's summary assignment of error, and the Government's response. We conclude that the findings and sentence are correct in law and fact and that no error materially prejudicial to the substantial rights of Appellant was committed. Arts. 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a) and 866(c).

### Erroneous Acceptance of Guilty Plea

In his sole assignment of error, Appellant asserts that the military judge erred in accepting his plea to Charge I and its specification. Appellant avers that this court should affirm only so much of the findings as to an unauthorized absence for a period of less than 30 days and reassess the sentence.

Unauthorized absence terminated by apprehension requires an individual to absent himself or herself from his or her unit, organization, or place of duty at which he or she is required to be, that the absence was without proper authority from anyone competent to give him or her leave, that the absence was for a certain period of time, and that the absence was terminated by apprehension. MANUAL FOR COURTS-MARTIAL, UNITED STATES (2000 ed.), Part IV, ¶ 10(b)(3).

A military judge may not accept a guilty plea to an offense without inquiring into its factual basis. Art. 45(a), UCMJ, 10 U.S.C. § 845(a); *United States v. Care,* 18 C.M.A. 535, 541, 40 C.M.R. 247, 253, 1969 WL 6059 (1969). Before accepting a guilty plea, the military judge must explain the elements of the offense and ensure that a factual basis for the plea exists. *United States v. Faircloth,* 45 M.J. 172, 174 (1996); *United States v. Davenport,* 9 M.J. 364, 367 (C.M.A.1980). "Mere conclusions of law recited by an accused are insufficient to provide a factual basis for a guilty plea." *United States v. Outhier,* 45 M.J. 326, 331 (1996)(citing *United States v. Terry,* 21 C.M.A. 442, 45 C.M.R. 216, 1972 WL 14158 (1972)). The accused "must be convinced of, and able to describe all the facts necessary to establish guilt." RULE FOR COURTS-MARTIAL 910(e), MANUAL FOR COURTS-MARTIAL, UNITED STATES (2000 ed.), Discussion. Acceptance of a guilty plea requires the accused to substantiate the facts that objectively support his plea. *United States v. Schwabauer,* 37 M.J. 338, 341 (C.M.A.1993); R.C.M. 910(e). The military judge must resolve inconsistencies and apparent defenses, or the guilty plea must be rejected. *Outhier,* 45 M.J. at 331.

The standard of review to determine whether a plea is provident is whether the record reveals a substantial basis in law and fact for questioning the plea. *United States v. Prater,* 32 M.J. 433, 436 (C.M.A.1991). Such rejection must overcome the generally applied waiver of the factual issue of guilt inherent in voluntary pleas of guilty. The only exception to the general rule of waiver arises when an error materially prejudicial to

the substantial rights of the appellant occurs. Art. 59(a), UCMJ; R.C.M. 910(j).

█ A military appellate court should "not overturn a guilty plea unless there is a 'substantial basis' for doing so." *United States v. Vega*, 39 M.J. 79, 80–81 (C.M.A.1994)(quoting *Prater*, 32 M.J. at 436); *see* Art. 45(a), UCMJ. Appellant waived all possible factual issues concerning his guilt of unauthorized absence terminated by apprehension when he voluntarily pleaded guilty. *United States v. Wilson*, 44 M.J. 223, 225 (1996); R.C.M. 910(j).

█ Appellant contends his plea to unauthorized absence [UA] from 23 October 2000 until he was apprehended on 15 December 2000 is improvident because he was under the control of military authority sometime in November 2000. Appellant's Brief of 30 Mar 2002 at 3–4. The military judge advised Appellant of the elements and definitions of his offense and tailored those elements to the facts and circumstances of his case. Appellant acknowledged he understood these elements and definitions, and stated they correctly described what he did.

On 23 October 2000, Appellant stopped going to work. During his UA, Appellant stayed at his residence. Sometime in November, a Second Class Petty Officer from Appellant's command came to Appellant's home and instructed him to go to the Makalapa Clinic for a command-directed fitness-for-duty screening. This Petty Officer arrived at Appellant's home at 0900 and was acting on behalf of the command. Appellant said the Petty Officer knew he was in a UA status; however, Appellant was not voluntarily surrendering to military control. The Petty Officer told Appellant that the Captain [Commanding Officer] had ordered a fitness-for-duty screening, and Appellant complied with the order. Appellant changed into his uniform and the Petty Officer brought Appellant to the clinic. They spent about 5 hours at the clinic, and then the Petty Officer returned Appellant to his residence. The Petty Officer then ordered Appellant to return to work the next day, and Appellant failed to do so. Appellant continued to remain UA until 15 December 2000, when agents from the Naval Criminal Investigative Service [NCIS] apprehended him.

The military judge found that for that 5-hour period in November, Appellant "was subject to military control and authority." Because the military judge did not know and could not ascertain from either Appellant or the Government the exact date Appellant was subjected to military control, he found Appellant guilty of the entire UA as charged. However, he stated that he would consider, as a matter in extenuation, that during that period of unauthorized absence there was a short break. Appellant's trial defense counsel agreed with the military judge's resolution of the issue.

In this case, Appellant was on notice that the charge of unauthorized absence encompassed the entire period alleged. Appellant can hardly claim to have been misled if, on the basis of his own plea or evidence, it appears that he came back under military control for a brief time during that period. *See United States v. Francis*, 15 M.J. 424 (C.M.A.1983). As the military judge noted, at 0900 Appellant was in a UA status for the day in question. He shortly thereafter continued his UA. Further, we believe our holding is consistent with our Superior Court's rationale in *Francis*. Appellant's case further expands the rationale of the *Francis* case in that he did not contest his guilt to the entire period of time alleged. Unfairness to Appellant would result "only if findings of guilty of the two lesser absences authorize a greater maximum punishment than that would be permitted only of the single longer absence for which he was brought to trial." *Francis*, 15 M.J. at 429.

█ Although the resolution of the inconsistency and potential defense of early termination in this case was unusual, we hold that the military judge did not err in accepting Appellant's plea of guilty to a single period of UA. We conclude the military judge properly accepted the plea for the following reasons. First, the facts objectively supported Appellant's plea of guilty of UA from 23 October 2000 to 15 December 2000. The indefinite approximate 5-hour period at the Navy medical clinic was, at most, a *de minimis* interruption of the alleged UA. Sec-

ond, Appellant and his trial defense counsel affirmatively waived any defense of early termination. Although he complied with the Second Class Petty Officer for the limited purpose of the fitness-for-duty medical examination, Appellant stated on the record that it was not his intention to voluntarily terminate his UA and submit to military control. Third, even assuming error, there was no material prejudice to the substantial rights of Appellant. The alternative was to find Appellant guilty of two periods of UA within the same charged period. Consequently, the military judge's acceptance of the plea had no impact on the maximum punishment that Appellant faced at his court-martial. For these reasons, we believe the result in this case is not inconsistent with the rationale of our Superior Court's holding in *Francis* as Appellant was not misled as to the charge, and no unfairness resulted as the variance did not increase his punitive exposure. *Id.*

The military judge considered finding Appellant guilty of two separate UA offenses. However, if the military judge had broken the UA into two separate offenses, then Appellant could have potentially suffered prejudice. Essentially, if the military judge convicted Appellant of two separate UA offenses, he would have found two UA offenses terminated by apprehension. He would have had to arbitrarily pick a date for the termination of one UA and the start of the second UA. This would have unfairly aggravated the offense beyond what Appellant had pled to and potentially subject him to a more severe sentence.

Appellant's answers during the providence inquiry supported the military judge's finding of a continual absence from his command, with only a brief 5-hour window where he was subjected to military control. The military judge properly exercised his discretion. After having entered specific findings in compliance with *United States v. Care*, 18 U.S.C.M.A. 535, 40 C.M.R. 247, 1969 WL 6059 (1969), concerning Appellant's pleas, he convicted him of the single UA and considered the brief period of military control as mitigation. Further, Appellant waived his right to have the military judge enter specific *Francis* findings on the record concerning

the UA charge when he did not request them. R.C.M. 910(j) and 918(b); *see generally Francis*, 15 M.J. at 428.

Appellant has failed to show a substantial basis in law and fact in the record to question his guilty plea. Therefore, Appellant's request for relief is denied.

## Conclusion

Accordingly, we affirm the findings of guilty and the sentence, as approved on review below.

Chief Judge LEO, Senior Judge OLIVER, Senior Judge FINNIE, and Judge CARVER, concur.

VILLEMEZ, Judge (concurring):

Those people ... the departmental interpreters of the laws in Washington ... can always be depended on to take any reasonably good law and interpret the common sense all out of it.

Mark Twain in an unmailed letter to H.C. Christiancy, 18 Dec. 1887.

When our interpretation of the law unnecessarily drifts too far from the bounds of common sense, we risk losing credibility. As Thomas Jefferson said: "If you state a moral case to a plowman and a professor, the farmer will decide it as well, and often better, because he has not been led astray by any artificial rules."

This concurrence is in respectful response to the dissenting opinion, which I believe—while perhaps intellectually and academically inviting—seems to unnecessarily place form over substance. Under the circumstances of this case, as discussed in the majority opinion, the military judge reached a practical and a legally sound decision, in a fashion that served well the interests of both the appellant and the Government. The appellant was afforded sentencing consideration and protection, and the Government was able to accurately document the *entire* period of appellant's 53-day unauthorized absence—terminated by apprehension—which the dissenting opinion would reduce meritoriously to 5

days.[1] Significantly, the appellant and his trial defense counsel had no objection to the solution reached by the military judge after all the facts and circumstances of the case were developed on the record.

Yes, as the dissenting opinion asserts, the majority opinion does use a "no harm—no foul," approach, and, in the context of this case, it enables this Court, within the scope of our duties and responsibilities, to let the outcome of the court-martial be determined when and where it should—in the courtroom—rather then here, far from the sights and sounds of the Fleet. The majority opinion does not, as asserted in the dissenting opinion, either stretch "*Francis* to the point of irrelevancy," or sow "the seeds of disruption and uncertainty for trial practitioners." [2] Rather, it expands the effectiveness of *Francis*, while reaffirming the faith and confidence of this Court in those who breathe life into the military justice system in courtrooms throughout the world to work within an appropriate and acceptable range of discretion to serve the interests of *all* parties and participants. The mosaic of the law, justice, and common sense does not always fit together as nicely and smoothly as we might wish, but when it does, we should embrace the fit, not reject it.

BRYANT, Judge (concurring in part, dissenting in part):

I concur with the majority's affirming of Appellant's convictions of multiple uses of both methamphetamine and marijuana. However, I respectfully disagree with the majority affirming Appellant's unauthorized absence (Charge I, Specification) for the period from "on or about 23 October 2000 . . . until he was apprehended on or about 15 December 2000." Charge Sheet. For the reasons noted below, I would only affirm so much of the charged offense as alleged an unauthorized absence [UA] from on or about 23 October 2000 until on or about 1 November 2000.

Since *United States v. Francis*, 15 M.J. 424 (C.M.A.1983) the law has been clear. Whenever it developed during a providence inquiry of a servicemember charged with UA that the absence, in fact, terminated at some point during the charged absence and, thereafter, the servicemember commenced a second absence, the servicemember could be found guilty of two periods of UA incorporated within the time frame of the originally charged offense. *United States v. Bush*, 18 M.J. 685 (N.M.C.M.R.1984), *rev. denied*, 19 M.J. 28 (C.M.A.1984). However, the punishment authorized by the combined lesser absences could not be greater than that authorized by the originally charged UA. *Francis*, 15 M.J. at 429; *United States v. Lovell*, 26 M.J. 776, 777 (N.M.C.M.R.1988). So, what has prompted the majority to embark on a new "no harm—no foul" [3] approach to firmly established precedent?

Apparently, this embarkation into a brave new world is based upon the majority's agreement with the military judge that it was simply *too hard* for the parties to ascertain an "on or about" date in November 2000 wherein Appellant, for one day, was "subject to military control and authority." Record at 83. The case involved a personal order of Appellant's commanding officer specifically directing action with regard to Appellant. A Second Class Petty Officer went to Appellant's home and subsequently escorted Appellant to a military medical facility. Appellant then underwent medical tests that should have generated date-stamped documentation. These are all memorable events

---

1. As this Court stated in *United States v. Fitzgerald*, 13 M.J. 643, 646 (N.M.C.M.R.1982), an unauthorized absence is "a very serious offense within the military where discipline and readiness are essential," and as a Cryptologic Technician Administrative Second Class Petty Officer stationed at a Naval Security Group Activity, we probably may assume the appellant's duties and responsibilities—most likely performed during his absence by a shipmate with critical work of his or her own—were significant and important to the command's mission.

2. *United States v. Francis*, 15 M.J. 424 (C.M.A. 1983). Quotations from *United States v. Pinero*, 58 M.J. 501, 505, 507, 508 (N.M.Ct.Crim.App. 2003)(Bryant, J., concurring in part, dissenting in part).

3. I readily acknowledge that the majority never uses the phrase "no harm—no foul." Nevertheless, I believe the phrase accurately summarizes the dominant theme of the majority's decision.

that occurred during a relatively short period of absence that ended 14 days before charges were referred to trial and less than two months before the actual trial. Nevertheless, the majority agrees that "the military judge did not know or could not ascertain" an "on or about" date. *United States v. Pinero,* 58 M.J. at 503 (N.M.Ct.Crim.App.2003). I am not persuaded.

I believe the majority misapplies the law, fails to appropriately follow case precedent, and sows the seeds for substantial confusion among military judges and trial practitioners. I acknowledge there is a certain attractiveness to the majority's resolution, if not with their analysis. One could argue they get close. I am, however, reminded of my grandfather's repeated comment to my brothers and myself when he supervised our use of his vintage squirrel-gun for target practice. We grandchildren would gleefully and proudly proclaim how close we were when, although missing the target, we hit the barn used as a back-drop. Grandpa's only retort would be "close enough ain't good enough—it'll never put meat on the table." In this instance, the majority's decision does not put any meat on the table.

The facts that establish a break in the charged UA are not in dispute. According to Appellant's sworn statement during the providence inquiry, his UA terminated at some point in November 2000, earlier than the date of which he was charged and convicted. The military judge specifically stated that, for a 5–hour period during the period of the UA, Appellant "was subject to military control and authority." Record at 83. He said Appellant:

> certainly complied with an order issued by his commanding officer to participate in a urinalysis and blood sample screening, and that would apparently terminate the pretrial—apparently would terminate the unauthorized absence at that point. And when he was ordered to report for duty the next day, that would appear to commence a second period of unauthorized absence, which was subsequently terminated by his apprehension on 15 December.

*Id.* "Generally, only the exercise of military control may terminate an unauthorized absence." *United States v. Asbury,* 28 M.J. 595, 598 (N.M.C.M.R.1989).

"Article 45(a) requires that, in a guilty-plea case, inconsistencies and apparent defenses must be resolved by the military judge or the guilty pleas must be rejected." *United States v. Outhier,* 45 M.J. 326, 331 (1996). In this case the military judge unmistakably determined, that for at least one day during Appellant's charged UA period, he had more than an "apparent defense;" *i.e.,* he was not, in fact, UA. Appellant was, for at least that one day, complying with the orders of his commanding officer, under the direct supervision of a Second Class Petty Officer, and doing so while at a military medical facility. Appellant was, thereafter, placed by the Second Class Petty Officer in an authorized liberty status, with directions to report the next day. Such factual information is directly inconsistent with Appellant's plea of being in a continuous, uninterrupted, UA status. The facts, as developed during the providence inquiry, negated an essential element of the offense; specifically, "that the absence was without authority [at least for one day] from anyone competent to give him [ ] leave." MANUAL FOR COURTS MARTIAL, UNITED STATES, (2000 ed.), Part IV, ¶ 10b(3).

In affirming the military judge's decision to find Appellant guilty of an uninterrupted UA, the majority first notes that Appellant can not claim to have been misled "if, on the basis of his own plea or evidence, it appears that he came back under military control for a brief period of time." *Pinero,* at 503 (emphasis added). It references with apparent approval the military judge's observation that since Appellant acknowledged he was UA until approximately 0900 on "whatever that day was," and that he failed to report the next day, then he was "technically UA during every day of that period." Record at 86 (emphasis added). The majority concludes this first phase of its support of the military judge's decision by indicating that their holding is consistent with, and is a logical expansion of *Francis,* inasmuch as Appellant did not "contest his guilt to the entire period of time alleged." *Id.*

In response to the majority's reasoning, I note first, there is no "if . . . it appears" or "technically" in this case. The military judge specifically concluded Appellant was subject to military control on one day during the UA time frame. Appellant's UA terminated at approximately 0900 on "that day" and a second UA commenced when he failed "to report at 7:30" the next morning. *Id.* All parties agreed that for one day in November 2000 Appellant was performing duties as directed by his commanding officer. For the majority to suggest that because Appellant may have been listed administratively as UA on the morning of "that day," he was, therefore, guilty of UA for the entire day, is to simply ignore the facts of the case.[4]

Second, the majority's reference to Appellant's inability to now "claim to have been misled" is, itself, misleading. The majority cites *Francis* as authority for the proposition that Appellant can not claim he was misled for being found guilty of UA on a day during which he was not, in actuality, UA. In *Francis*, the reference to being misled is for a proposition inapposite to the majority's position. In *Francis*, Chief Judge Everett said:

> We doubt the correctness of the underlying premise that an accused charged with one offense cannot be found guilty of more than one at the same trial. . . . In the present case, appellee was on notice that he was charged with unauthorized absence from March 5, 1979, until July 16, 1980. He can hardly claim to have been misled if, on the basis of his own plea or evidence, it appears that he came back under military control for some time during that period.

*Francis*, 15 M.J. at 429. The "misleading" to which Chief Judge Everett referred—and to which the majority references as authority— was to an appellant's inability to claim being misled when the charged absence is separated into multiple offenses at trial based on facts provided by the appellant at trial. It was not, as in this case, to finding Appellant guilty of a one-day UA for which the facts he swore to at trial established he is, in fact, not guilty.

Finally, in holding that the decision in this case is consistent with and "further expands the rationale in *Francis*," the majority significantly understates the implications of their decision. *Pinero*, at 503. Their decision does not expand *Francis*; it completely abrogates[5] it. After this decision, what need is there of *Francis*? If an appellant can now be found guilty of an uninterrupted UA, despite clear information that there was one day of intervening military control, what if the interruption is greater than one day? What if the interruption is 2, 4, 13, or more days? One would imagine that at some point the interruption would be too great for the majority to approve, but after how many days? The majority has replaced a precise standard, *Francis*, with an amorphous, "no harm—no foul" standard, the application of which is dependent on factors yet to be fully ascertained.

In its "expansion" of *Francis*, the majority cites three justifications for supporting the military judge's decision. Briefly summarizing, the majority's new factors are: 1) a one-day interruption is *de minimis*, 2) Appellant affirmatively waived the issue (coupled with no stated intention on Appellant's part to voluntary terminate his UA), and 3) assuming error, there was no prejudice to the Appellant's substantial rights.

Initially, I note that all of the majority's justifications share a common feature; *i.e.*, none are supported by case or statutory authority. Turning specifically to the first justification, it is apparent the majority seeks to

---

4. In *United States v. Bush*, 18 M.J. 685 (N.M.C.M.R.1984), *rev. denied*, 19 M.J. 28 (C.M.A.1984), the first reported case from this Court after *Francis*, the appellant was charged with UA from 3 July 1978 until 20 October 1983. He entered a plea to UA terminating on 6 August 1978, but was convicted as charged. The supervisory authority approved four separate findings of UA of 3 July 1978 until 6 August 1978, UA of 6 August 1978 until 8 August 1978, UA of 8 August 1978 until 12 January 1980, and UA of 12 January 1980 until 20 October 1983. Citing *Francis*,

we affirmed. As *Bush* amply illustrates, from the earliest post-*Francis* says this Court has not hesitated to affirm multiple UA offenses, arising and contained within a charged UA period, even when one UA terminates and a second commences on the very same day.

5. Perhaps more precisely, it abrogates all decisions from this Court, *e.g.*, *Bush*, that have cited *Francis* with authority since 1983.

expand not only *Francis,* but also what is appropriate for *de minimis* consideration. The majority is, in essence, saying that it is permissible to find Appellant guilty of an offense *he did not commit* because the offense is but a small part of a greater charged offense. Appellant is guilty, or he is not. *De minimis* consideration has been confined in the past to matters that ultimately have had no impact on an appellant's guilt.[6] Saying Appellant's one-day return to military control is a *de minimis* component to the greater UA offense significantly misapplies the traditional use of that legal concept.

Second, indicating that Appellant waived the issue disregards the underlying truth; *i.e.,* as of 0900 on "that day," Appellant *was not guilty of UA.* Pursuant to Article 66(c), UCMJ, this Court "may affirm only such findings of guilty ... [as we find] correct in law and fact." The facts are simple; Appellant was not guilty of UA on "that day." *Cf. United States v. Smauley,* 42 M.J. 449, 450 (1995)("A statement raising an affirmative defense to a charged offense may constitute matter in substantial conflict with a guilty plea."). The majority is condoning a procedure wherein an appellant can waive the fact that he or she is simply not guilty of the offense as charged.[7]

The majority states that "[a]lthough he complied with the Second Class Petty Officer for the limited purpose of the fitness-for-duty medical examination, Appellant stated on the record that it was not his intention to voluntarily terminate his UA and submit to military control." *Pinero,* at 504. Whether or not Appellant subjectively intended to terminate his UA, it is undisputed that his UA terminated on "that day." His subjective intent would be relevant if, perhaps, there was a dispute as to whether Appellant's 5–hour period was but a "casual presence" onboard a military installation. *See United*

States v. Jackson, 1 C.M.A. 190, 2 C.M.R. 96, 1952 WL 1700 (1952); *United States v. Smith,* 37 M.J. 583 (N.M.C.M.R.1993). However, casual presence is not an issue at all in this case. UA is a general intent crime. MCM, Part IV, ¶ 10c(3). Appellant may not have intended or desired to terminate his absence on "that day," but he did. The majority's reliance on Appellant's subjective intent—in a case where intent is not a factor—is misplaced.

The majority concludes by noting that, even if they were wrong in approving an uninterrupted UA, it is still a "no harm—no foul" situation. But, while suggesting there was no reasonable alternative other than to approve an uninterrupted UA, they engage in erroneous speculation. They indicate that, had the military judge endeavored to use a *Francis* approach,

> he would have found two UA offenses terminated by apprehension. He would have had to arbitrarily pick a date for the termination of one UA and the start of the second UA. This would have unfairly aggravated the offense beyond what Appellant had pled to and potentially subject him to a more severe sentence.

*Pinero,* at 504. First, there is no requirement under *Francis,* or its progeny, that would have dictated that the military judge find the first UA terminated by apprehension. Second, the lack of any precision as to the specific date in November when the first absence ended—and a second would have begun—must be placed directly at the feet of the parties. If the date was uncertain, the military judge had multiple options at his disposal besides making an arbitrary date selection. Ultimately, he retained the option to reject the plea. Finally, even if the military judge had entered *Francis* findings, absolutely nothing precluded him from ruling

---

6. *See, e.g., United States v. Guyton–Bhatt,* 56 M.J. 484, 487 (2002)(argument of trial counsel); *United States v. McAllister,* 55 M.J. 330, 334 (2002)(misspelling of a name on a form); *United States v. Fricke,* 53 M.J. 149, 155 (2000)(appellant being in pretrial confinement for 326 days and locked in a cell for 23 hours a day was not a *de minimis* imposition on appellant); *United States v. Klein,* 55 M.J. 752, 755 (N.M.Ct.Crim. App.2001)(staff judge advocate's misidentifica-

tion of location to which appellant failed to report).

7. In essence, the majority is establishing an appellant's option of pleading *nolo contendere. Nolo contendere* pleas are not authorized in our practice. *United States v. Sweet,* 38 M.J. 583, 589 (N.M.C.M.R.1993), *aff'd,* 42 M.J. 183 (1995).

that he would consider the maximum punishment to be the maximum for one uninterrupted UA. Indeed, *Francis* arguably requires that the maximum punishment be so limited.[8]

The majority concludes their analysis of this case by holding that the military judge "properly exercised his discretion" in accepting the plea to an uninterrupted UA. *Pinero*, at 504. The majority fails to provide, however, any authoritative support for their conclusion that the military judge had the discretion—any discretion—to disregard a clear, undisputed factual inconsistency with Appellant's plea. *See Outhier*, 45 M.J. at 331.

Arguably, the majority's decision may make it easier for military judges to accept guilty pleas in future UA cases. They do so, however, by ignoring facts in evidence in this case that were material to the elements of the offense. Rather than "expanding" *Francis*, the majority has, regrettably, stretched *Francis* to the point of irrelevancy. In the process they have also sown the seeds of disruption and uncertainty for trial practitioners.

Inasmuch as Appellant indicated, and the military judge agreed, that at some point in November 2000 Appellant was under military control, and inasmuch as the date was never narrowed by the parties nor by the military judge, I would only affirm so much of the charged offense as alleged a UA from on or about 23 October 2000 until on or about 1 November 2000. I would reassess the sentence in accordance with *United States v. Cook*, 48 M.J. 434, 438 (1998), *United States v. Peoples*, 29 M.J. 426, 428 (C.M.A.1990), and *United States v. Sales*, 22 M.J. 305, 307–08 (C.M.A.1986). I would, nevertheless, find that the original sentence is appropriate and no greater than the sentence that would have been imposed had the military judge found Appellant guilty of UA terminating on or about 1 November 2000. I would therefore affirm the adjudged sentence, as approved on review below.

Senior Judge PRICE and Judge RITTER concur.

---

**8.** "Unfairness to an accused would result only if findings of guilty of the two lesser absences authorized a greater maximum punishment than would be permitted if he were convicted only of the single longer absence for which he was brought to trial." *Francis*, 15 M.J. at 429.